[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 420.]

KEMPPEL ET AL., APPELLANTS, *v*. ZAINO, TAX COMMR., APPELLEE.

[Cite as *Kemppel v. Zaino*, 2001-Ohio-92.]

*Taxation—Income tax—Liquidation of assets of Ohio subchapter S corporation followed by dissolution of the corporation—Income from the gain on the sale of the intangible personal property not business income as defined in R.C. 5747.01(B)—Tax Commissioner's remitting of portion of the statutory penalty is not an abuse of discretion.*

(No. 00-358—Submitted February 27, 2001—Decided May 23, 2001.)

APPEAL from the Board of Tax Appeals, No. 98-K-698.

_____

ALICE ROBIE RESNICK, J.

{¶ 1} In 1989 the assets of the Logan Machine Co. ("Logan"), an Ohio subchapter S corporation located in Akron, were liquidated and the corporation dissolved. The net proceeds from the sale of the assets were distributed to the shareholders, including appellants, Russell and Carrie Kemppel,[1] who were residents of and domiciled in Florida at the time of the sale. As shareholders of Logan, each of the Kemppels received his or her pro rata share of the net proceeds of the sale, including gain from the sale of intangible personal property, which was attributed to goodwill.

{¶ 2} To calculate the amount of their nonresident tax credit under R.C. 5745.05(A), the Kemppels calculated the ratio of their non-Ohio income to their total income. In calculating this ratio, the Kemppels included as non-Ohio income all income attributed to them from Logan, except that from ordinary business operations prior to the sale. The Tax Commissioner audited the Kemppels' return

_____

1. On February 5, 2001, a suggestion of death was filed for Carrie M. Kemppel. Russell E. Kemppel as administrator of the estate of Carrie M. Kemppel has been substituted as a party.

and treated all of the income attributed to them from Logan as business income and therefore subject to allocation to Ohio, including the gain from the sale of the intangible personal property (goodwill). As a result, the ratio of the Kemppels' non-Ohio income to total income was reduced, thereby reducing the amount of the Kemppels' nonresident credit and increasing their Ohio tax. The assessment issued by the commissioner included the statutory double interest penalty.

{¶ 3} The Kemppels filed for reassessment. After a hearing, the commissioner affirmed his assessment; however, he reduced the statutory interest penalty by one-half. The Kemppels appealed the commissioner's decision to the Board of Tax Appeals, which affirmed the assessment. This cause is now before the court upon an appeal as of right.

{¶ 4} The Kemppels present two issues: (1) Is the income attributed to the Kemppels from the gain on the sale of intangible personal property, as a result of the liquidation of Logan, business or nonbusiness income? and (2) Did the Tax Commissioner abuse his discretion in not abating the entire statutory interest penalty?

{¶ 5} Because the Kemppels are shareholders in a subchapter S corporation, the character of the income attributed to them from Logan is determined as though they had received it directly from the same source as Logan. *Dupee v. Tracy* (1999), 85 Ohio St.3d 350, 708 N.E.2d 698; Section 1366(b), Title 26, U.S.Code. Thus, if income is business income to Logan, it is business income to the Kemppels; if income is nonbusiness income to Logan, it is nonbusiness income to the Kemppels.

{¶ 6} Former R.C. 5747.21 provided: "All items of business income * * * shall be allocated to this state by [apportionment]." Sub.H.B. No. 250, 140 Ohio Laws, Part I, 2643. R.C. 5747.20(B)(2)(c) provides that the nonbusiness income of a nonresident resulting from capital gains from the sale of intangible property is "allocable to this state if the taxpayer's domicile was in this state at the time of such sale or other transfer." Since the Kemppels were not domiciled in Ohio at the time

of the sale, none of their share of the income from the gain on the sale of the intangible personal property can be allocated to Ohio unless the income is classified as business income.

{¶ 7} R.C. 5747.01(B) and (C) define the terms "business income" and "nonbusiness income":

"(B) 'Business income' means income arising from transactions, activities, and sources in the regular course of a trade or business and includes income from tangible and intangible property if the acquisition, rental, management, and disposition of the property constitute integral parts of the regular course of a trade or business operation.

"(C) 'Nonbusiness income' means all income other than business income and may include, but is not limited to, compensation, rents and royalties from real or tangible personal property, capital gains, interest, dividends and distributions, patent or copyright royalties, or lottery winnings, prizes, and awards."

{¶ 8} The definition of "business income" set forth in R.C. 5747.01(B) is a modified version of the definition initially promulgated by the National Conference of Commissioners on Uniform State Laws in 1957, as part of its Uniform Division of Income for Tax Purposes Act ("UDITPA"). The UDITPA definition was later adopted by the Multistate Tax Commission. The same definition or a slightly modified version has been adopted by many states.

{¶ 9} Courts in other states have split in applying tests for classifying income. Some courts have applied the "transactional test," and others have applied an additional distinct test, the "functional test." To facilitate discussion of these tests we have separated R.C. 5747.01(B) into two parts:

**Part I:** " 'Business income' means income arising from transactions, activities, and sources in the regular course of a trade or business"

and

**Part II:** "includes income from tangible and intangible personal property if the acquisition, rental, management, and disposition of the property constitute integral parts of the regular course of a trade or business operation."

{¶ 10} The transactional test, which the Kemppels urge us to adopt, considers the statute as a whole and emphasizes Part I of the definition. It treats Part II as merely giving examples of income within Part I. In this test the income is business or nonbusiness depending on whether it arises from a transaction or activity that occurs in the regular course of the business in which the taxpayer engages. The nature, frequency, and regularity of the transaction are relevant factors. *W. Natural Gas Co. v. McDonald* (1968), 202 Kan. 98, 446 P.2d 781; *Phillips Petroleum Co. v. Iowa Dept. of Revenue & Fin.* (Iowa 1993), 511 N.W.2d 608; *In re Uniroyal Tire Co. v. State Dept. of Revenue* (Ala.2000), 779 So.2d 227. In addition, some courts also look to see whether the proceeds of the transaction are used in the business or dispersed to shareholders. *Union Carbide Corp. v. Huddleston* (Tenn.1993), 854 S.W.2d 87, 93.

{¶ 11} The functional test, which the commissioner urges us to adopt, focuses on Part II, treating it as independent of Part I. Under the functional test, business income includes income from sale of personal property if use of the property constituted an integral part of the regular course of a trade or business operation. The Pennsylvania Supreme Court has stated, "Income meets the functional test if the gain arises from the sale of an asset which produced business income while it was owned by the taxpayer." *Laurel Pipe Line Co. v. Commonwealth, Bd. of Fin. & Revenue* (1994), 537 Pa. 205, 210, 642 A.2d 472, 475. Under the functional test, the extraordinary nature or infrequency of the transaction is irrelevant.

{¶ 12} Nevertheless, some courts that have adopted the functional test have also recognized that the sale of assets as part of the total or partial liquidation of a business is different from the sale of assets by a continuing business. In *Polaroid*

*Corp. v. Offerman* (1998), 349 N.C. 290, 306, 507 S.E.2d 284, 296, although the North Carolina Supreme Court recognized the functional test, it noted, in footnote six, "[C]ases involving liquidation are in a category by themselves. Indeed true liquidation cases are inapplicable to these situations because the asset and transaction at issue are not in furtherance of the unitary business, but rather a means of cessation." Likewise, in *Laurel Pipe Line Co.,* the Pennsylvania Supreme Court, while recognizing the functional test, held that the partial liquidation of a company's business by the sale of a pipeline that had been idle for over a year "was not disposed of as an integral part" of the company's regular trade or business and, therefore, was not business income. *Id.,* 537 Pa. at 211, 642 A.2d at 475.

**{¶ 13}** After reviewing these authorities we find that we do not need to determine which test is applicable to decide this case. The income received by Logan was not business income under either the transactional test or the functional test. The income in question resulted from a liquidation of assets followed by a dissolution of the corporation; this was a one-time event that terminated the business. This was no sale in the regular course of a trade or business. Therefore, the income from the gain on the sale of the intangible personal property was not "business income" as defined in R.C. 5747.01(B).

**{¶ 14}** Next the Kemppels contend that the Tax Commissioner abused his discretion by failing to abate the entire statutory penalty. The penalty was based on assessments that the Kemppels no longer dispute, as well as on the assessment that we have determined to be improper. Obviously the portion of the penalty related to the improper assessment must be abated. The Kemppels seek abatement of the entire penalty because their failure to pay the proper amount of tax was based on the advice of a national accounting firm.

**{¶ 15}** R.C. 5747.15(A)(2) provides that if a taxpayer fails to pay the amount of tax required, "a penalty shall be imposed equal to twice the interest charged under division (G) of section 5747.08 of the Revised Code for the

delinquent payment." R.C. 5747.15(C) provides: "All or part of any penalty imposed under this section may be abated by the commissioner if the taxpayer shows that the failure to comply with the provisions of this chapter is due to reasonable cause and not willful neglect." The Tax Commissioner, here, has abated one-half the statutory penalty.

{¶ 16} The Kemppels failed to present any evidence to substantiate their claim that the Tax Commissioner abused his discretion as to the assessments that they no longer dispute. In prior cases this court has held that its review of the commissioner's discretionary power to remit a penalty is limited to whether an abuse of discretion has occurred. *Jennings & Churella Constr. Co. v. Lindley* (1984), 10 Ohio St.3d 67, 10 OBR 357, 461 N.E.2d 897. This matter is remanded to the Tax Commissioner to exercise his discretion to reassess the penalty related to the assessments the Kemppels no longer dispute.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

_____

*Witschey & Witschey Co., L.P.A.*, *Jeffrey T. Witschey* and *Frank J. Witschey*, for appellants.

*Betty D. Montgomery,* Attorney General, and *Robert C. Maier,* Assistant Attorney General, for appellee.

*Jones, Day, Reavis & Pogue* and *Charles M. Steines*, urging reversal for *amicus curiae* Lewis W. Dickey.

*Taft, Stettinius & Hollister, L.L.P.,* and *Stephen M. Nechemias*, urging reversal for *amici curiae* David S. and Linda K. Paresky.

———————————