OPINION
This is a timely appeal from a decision of the Mahoning County Court of Common Pleas granting James Mays', Administrator of the Estate of Curtis Mays, ("Appellee"), motion for a directed verdict. The trial court ruled that Defendant Danielle Taylor ("Taylor") had recklessly operated her motor vehicle in connection with an automobile accident that killed Appellee's son and two other passengers. This action barred Taylor and her co-defendant, Allstate Insurance Company ("Appellant" and Appellee's uninsured motorist carrier), from raising and arguing the defense of comparative negligence.
The jury in this matter returned a verdict in favor of Appellee in the amount of $250,000. Appellant asked the court to reduce the verdict, maintaining that Appellee was only entitled to $100,000 under the per-person limitations of the policy. The trial court subsequently found, however, that Appellant's policy language setting forth the limitations was ambiguous and directed Appellant to pay Appellee the per-accident amount of $200,000.00. The court also assessed prejudgment interest accruing from the date that Appellant had formally denied Appellee's claim. (Amended Judgment Entry, September 19, 2000). Appellant appeals this ruling, as well.
As discussed herein, the record supports the trial court's finding that Taylor acted recklessly. Therefore the trial court properly precluded Appellant and Taylor from raising the defense of comparative negligence. Further, the court did not abuse its discretion when it assessed prejudgment interest accruing from April 6, 1998. The court's conclusion with respect to the ambiguity of Appellant's "per person" policy limitations, however, was erroneous and requires a modification of the judgment and reduction of the damages awarded.
On the morning of January 29, 1998, after a night of sporadic partying, Taylor, Michael Morgan, Paul Ernst, Jr., Curtis Mays and Ryan Rupert proceeded to a bar and restaurant in Girard known as Kuzman's. On the way, several individuals in the group purchased and consumed several beers. (Tr. pp. 119, 161). When they arrived, Mays and Taylor sat at a table and drank beer while the other three shot pool, chasing shots of whiskey with glasses of beer. (Tr. pp. 164-68).
After about an hour, an argument erupted between Ryan Rupert and several bar patrons. Fearing that Rupert would turn violent, Morgan and Ernst dragged him from the bar and got him into the back seat of Taylor's gray Mercury Marquis. (Tr. pp. 172-74). Taylor's grandparents had recently given it to Taylor, who had then allowed the insurance on it to lapse. (Tr. p. 110).
The rest of the group also got into the car and Taylor sped home. Morgan sat in the front seat next to Taylor, while Mays crowded in the backseat between Ernst and Rupert. (Tr. p. 112). A witness to the incident testified that the driver had been operating the vehicle in an erratic manner and at an excessive speed. (Tr. pp. 209, 233, 255-56, 259, 261). The temperature that morning was 32 degrees Fahrenheit and the roads were slick. (Tr. pp. 24, 208).
Taylor proceeded east on Route 422 toward Lowellville where she lived. Rupert's anger, in the meantime, had not subsided. As the vehicle approached the intersection of Route 422 and Wirt Street in Youngstown, a physical confrontation flared between Rupert and Ernst. Both young men were powerfully built. (Tr. pp. 167, 202). Mays, who sat between them, possessed a much smaller physique. (Tr. pp. 48, 79, 201).
Apparently fearful of sustaining collateral injury in the argument between Ernst and Rupert, Mays urged Taylor to pull over. (Tr. pp. 180-181). When Taylor refused, Mays apparently leaned over the front seat, grabbed the steering wheel, and pulled it toward the right side of the road. (Tr. pp. 183-186). Taylor jerked the wheel toward the left, wrenching it out of Mays' grasp. The vehicle crossed over the westbound lanes and into oncoming traffic. It struck the front end of a minivan and crashed into a telephone pole. (Tr. pp. 186-190). Ernst, Mays and Rupert catapulted from the vehicle and perished.
Both Morgan and Taylor survived. Taylor, who had a blood alcohol level of 0.13 at the time of the incident, was arrested. On October 30, 1998, Taylor entered guilty pleas to three counts of aggravated vehicular homicide in violation of R.C. § 2903.06 (A)(B) (C). (Plaintiff's Exh. 19).
A variety of lawsuits sprang from this incident. The present appeal addresses the Mays' wrongful death action against Taylor and their claim against Appellant for uninsured motorist coverage as provided under their Allstate insurance policy. The matter went to trial on July 31, 2000. After opening statements, Appellee asked the trial court to direct a finding that Taylor was reckless as a matter of law.
The trial court deferred ruling on the motion until both sides had rested. The court then concluded that Taylor's conduct was reckless. As a result, the trial court held, Allstate's allegations of contributory (actually comparative) negligence on the part of Curtis Mays was, "not a justiciable issue in this case." (Judgment Entry, August 1, 2000).
The case went to the jury on the issues of proximate cause and damages. The jury concluded that Taylor's operation of the vehicle was a direct and proximate cause of Curtis Mays' death and awarded Appellee damages totaling $250,000. With respect to any role Curtis Mays may have played in the accident, the jury concluded that Curtis Mays' had not operated the vehicle. The court entered judgment on the verdict on August 1, 2000.
The trial court subsequently reduced the damage award to $200,000, to reflect what it concluded was Appellant's maximum potential obligation for uninsured motorist coverage under the policy. The trial court also ordered Appellant to pay Appellee prejudgement interest pursuant to R.C. § 1343.03(A) accruing from April 6, 1998, the date on which it first denied Appellee's uninsured motorist claim.
Appellant now appeals from the trial court's decision and raises three assignments of error. For ease of understanding, this Court will address Appellant's second assignment of error last.
Appellant contends in its first assignment of error:
 "The trial court erred to the prejudice of Allstate in granting Mays' Motion for Directed Verdict and thereby refusing to submit the issue of comparative negligence to the jury."
Appellant maintains that the trial court erred when it granted Appellee's motion for a directed verdict on the issue of Taylor's recklessness and thereafter precluded the jury from considering the issue of Curtis Mays' comparative negligence.
Based on the record herein, Appellant's first assignment of error is not well-taken. This Court subjects the trial court's decision to grant a directed verdict to de novo review. Abbott v. Jarrett Reclamation Serv.,Inc. (1999), 132 Ohio App.3d 729, 738. The de novo standard of review essentially requires us to reexamine the matter, using the same standard the trial court used when it ruled on the issue. Under Civil Rule 50(A)(4), a motion for directed verdict is properly granted where, after construing the evidence most strongly in favor of the nonmoving party, the trial court finds that reasonable minds could come to but one conclusion with respect to a particular determinative issue. Civ.R. 50(A)(4).
Appellant maintains that the trial court misapplied the aforementioned standard when it found, as a matter of law, that Taylor had been reckless. Appellant argues that in doing so, the trial court necessarily disregarded the testimony of witnesses and thereby usurped the jury's function.
Appellant is mistaken in its contention here. Even viewing the evidence in a light most favorable to Appellant and Taylor, there was an abundance of undisputed evidence adduced at trial to support the court's conclusion that Taylor acted recklessly and that no reasonable person could conclude otherwise.
In Thompson v. McNeill (1990), 53 Ohio St.3d 102, the Ohio Supreme Court adopted the following definition of "recklessness":
 "The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."
2 Restatement of the Law 2d, Torts (1965), at 587, Section 500.
The Restatement further distinguishes between intentional conduct and recklessness as follows:
 "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it * * * the risk must itself be an unreasonable one under the circumstances."
Comments a f, Sec. 500, pp. at 588, 590. The undisputed evidence adduced at trial shows that Taylor's conduct readily falls within this definition.
To begin with, Taylor pleaded guilty to the offense of aggravated vehicular homicide in connection with the incident. Under Ohio's Rules of Criminal Procedure, a guilty plea is a complete admission of guilt. Crim.R. 11. Guilty pleas in criminal proceedings are traditionally treated as admissions in civil causes of action predicated on the same underlying facts. State ex rel. Kendzia v. Carney (1969), 20 Ohio St.2d 37,40; and Shepperd v. Mack (1980), 68 Ohio App.2d 95, 105.
Recklessness is the requisite culpable mental state for the offense of aggravated vehicular homicide. The Ohio Revised Code provides that one commits the offense of aggravated vehicular homicide by recklessly causing another's death during the operation of a motorized vehicle. R.C. § 2903.06. The Code further describes a reckless actor as follows:
 "* * * with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
R.C. § 2901.22(C). Accordingly, the trial court's directed verdict is justified, at least in part, by Taylor's own admission that she had conducted herself recklessly in connection with the incident.
The trial court also concluded that Taylor was reckless based on testimony that she operated her vehicle in an irregular manner just before the accident occurred. Appellant argues the trial court's finding necessarily discounted the testimony elicited from Morgan. A review of Morgan's deposition, however, reflects that his testimony largely corroborates the court's finding that Taylor was reckless.
Morgan testified that from the time he entered the vehicle until the time of the crash, he directed most of his attention to the back seat where the conflict between Ernst and Rupert had been developing. (Tr. pp. 174, 180, 209, 235). When he did take notice of Taylor's driving he saw that she frequently changed lanes in order to maintain her chosen speed of 60-65 mph. (Tr. pp. 209, 233, 235).
Melanie Shoaf, another eyewitness, confirmed that Taylor had operated the vehicle erratically. Shoaf, who was a nursing student at Youngstown State University at the time, was on her way to school when she encountered the vehicle. Shoaf followed the vehicle for some time on Route 422 that morning. In the minutes that preceded the accident Shoaf observed Taylor slow down, speed up and weave in and out of traffic. (Tr. pp. 255-256, 259, 261).
Further, while there was some disagreement regarding the amount of alcohol that Taylor consumed in the hours leading up to the crash, there was no dispute that she had a blood alcohol level of 0.13 after the crash. (Tr. p. 27). Not only was she six times the legal limit for an under-aged driver (she was eighteen at the time), but under Ohio's Traffic Code she was intoxicated as a matter of law. R.C. § 4511.19.
Finally, the evidence was uncontested that Taylor was speeding at the time of the accident. Morgan testified that before the crash, Taylor reached speeds of 60 to 65 mph, nearly twice the posted speed limit of 35 mph. (Tr. pp. 205, 208, 261). Shoaf confirmed that the vehicle was speeding. (Tr. p. 261). Even Taylor, who had difficulty recalling the events leading to the crash, recounted that the group had departed the bar in a hurry to avoid an altercation with other patrons. (Tr. p. 111).
Appellant concedes that Taylor was speeding insisting, however, that speeding alone does not warrant a finding of recklessness. Perhaps if speeding alone were the only conduct involved in this case, we would concede this point to Appellant. Akers v. Stirn (1940), 136 Ohio St. 245. But, as already detailed above, the circumstances presented involve decidedly more than speeding. The undisputed evidence adduced at trial disclosed that Taylor was intoxicated, that she operated her vehicle erratically, that she did so at an excessive speed and that the driving conditions on the roads that morning were slippery. Later, she admitted that she recklessly operated her vehicle when she pleaded guilty to the offense of aggravated vehicular homicide.
Under the circumstances, the trial court did not err when it concluded that reasonable people viewing this evidence, even in a light most favorable to Taylor, could only find that she was reckless. See Clark v.Hiatt (1957), 105 Ohio App. 402 (defendant acted with wanton and reckless misconduct where he attempted to negotiate an abrupt curve on a slippery road at night at an excessive rate of speed); and State v. Fitzwater
(December 10, 1999), Hamilton App. Nos. C-981005, C-981006, unreported (defendant was reckless and therefore guilty of aggravated vehicular homicide where he was traveling well in excess of the speed limit and weaving through traffic moments before striking pedestrian); and Statev. Caudill (1983), 11 Ohio App.3d 252 (defendant was reckless and therefore guilty of aggravated vehicular homicide where he was operating his vehicle while intoxicated, speeding and driving erratically).
Once the trial court reached the conclusion that Taylor was reckless as a matter of law, it properly removed any question of comparative negligence on Curtis Mays' part from the case. Comparative negligence is not an available defense where the defendant acted wilfully, wantonly or recklessly. Schellhouse v. Norfolk Western Railway Co. (1991),61 Ohio St.3d 520, 525; see accord, Wightman v. Consolidated Rail Corp. (1999), 86 Ohio St.3d 431 (once defendant has been shown to have acted with actual malice, evidence of plaintiff's comparative negligence is inadmissible); and Lambert v. Shearer (1992), 84 Ohio App.3d 266
(contributory or comparative negligence is no defense to a reckless or intentional tort).
When the trial court directed a verdict that Taylor was reckless as a matter of law, it left open the question of whether Taylor's reckless conduct was the proximate cause of the accident. (Judgment Entry, August 1, 2000). Accordingly, Appellant was still able to argue that Curtis Mays proximately caused the accident when he grabbed and jerked the steering wheel. (Tr. p. 270). In light of the jury's verdict and its conclusion that Mays had not operated the vehicle, however, it obviously rejected such a theory.
In its third assignment of error, Appellant complains that,
 "The trial court erred in awarding prejudgment interest from a date before the Mays' claim became due and payable."
Appellant contends that Appellee's claim did not become "due and payable," thereby triggering the accrual of prejudgment interest under R.C. § 1343.03(A), until August 2, 2000, the day the jury returned a verdict favorable to Appellee. Therefore, according to Appellant, the trial court erred by awarding Appellee prejudgment interest accruing from April 6, 1998, the date on which it formally denied Curtis Mays' parents' claim for uninsured motorist benefits arising from the death of their son. This Court cannot agree with Appellant's argument. A trial court's assessment of prejudgment interest will not be reversed absent an abuse of discretion. Landis v. Grange Mutual Ins. Co. (1998), 82 Ohio St.3d 339. Reversal of any ruling under such a deferential standard requires the reviewing court to find that it was unreasonable, arbitrary or unconscionable, not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Given the dictates of R.C. § 1343.03(A) and case law interpreting it, we conclude that the trial court's decision was consistent with the principles set forth therein.
An insured is entitled to prejudgment interest on his uninsured motorist claim under R.C. § 1343.03(A). That section, in relevant part, provides that:
 "* * * when money becomes due and payable upon any* * * instrument of writing* * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
R.C. § 1343.03(A). An award of prejudgment interest is intended to encourage prompt settlement and discourage defendants from opposing and prolonging, between injury and judgment, the resolution of legitimate claims. Royal Electric Construction Corp. v. Ohio State University
(1995), 73 Ohio St.3d 110, 116.
A party seeking interest under this section need not demonstrate that the insurer acted in bad faith. Craig v. Grange Ins. Co. (November 5, 1999), Montgomery App. No. 17675, unreported. Prejudgment interest is not intended to punish the party responsible for the underlying damages. Rather, it acts to compensate and ultimately to make the aggrieved party whole. See, McCormick, Damages (1935), 205, Section 50 et seq.; 3 Restatement of the Law 2d, Contracts (1981), 150-151, Section 354(2).
To determine the amount of prejudgment interest warranted in a particular case, the trial court need only inquire whether the aggrieved party has been fully compensated. The award of prejudgment interest is solely intended to compensate the plaintiff for the period of time between accrual of the claim and judgment. Royal Electric, supra, at 117. R.C. § 1343.03(A) applies even when the judgment arises from a disputed claim and when the sum due was not capable of being ascertained until determined by the court. Yuhanick v. Cooper (March 14, 2001), Columbiana App. 99 CO 37, unreported.
In Landis v. Grange Mutual Ins. Co. (1998), 82 Ohio St.3d 339, the Ohio Supreme Court found that because uninsured motorist claims are contract claims, based on "instruments of writing," an insured would be entitled to prejudgment interest under Section 1343.03(A). Id. at 341. When it reached this decision, however, the Supreme Court explicitly left the trial court to determine the amount of interest and, therefore, the event or condition that triggered its accrual. Id. at 342.
Appellant maintains that the trial court erred in awarding prejudgment interest from the date it denied coverage because at the time, Appellant reasonably disputed: 1) whether the Mays were covered for the wrongful death of their adult son under the policy; and 2) whether they were "legally entitled" to recover under the uninsured motorist provision of their policy. (Appellant's Brf. p. 21). Appellant argues that in light ofEagle American Ins. Co. v. Frencho (1996), 111 Ohio App.3d 213, Appellee was not legally entitled to recover under the policy until the jury issued its verdict in the case.
Appellant's reliance on Eagle American is misplaced. There, the court affirmed the trial court's refusal to grant the plaintiff's request for prejudgment interest. Id. at 221. The Eagle American court did so, however, based on language incorporated in the insurance policy which stated that damages were not due and payable until the jury reached a verdict. Id. at 221. That language was not included in the Allstate policy at issue here.
The policy addressed in the instant case is more like that in Lovejoyv. Westfield National Ins. Co. (1996), 116 Ohio App.3d 470. There, the insurer challenged the trial court's decision to grant prejudgment interest to the insured from the date he sustained injury. Id. at 476. The insurer contended that no prejudgment interest should be paid because the amount due was not ascertainable prior to trial and that, in any event, the insurer had reasonably disputed its duty to pay the claim.Id.
When it affirmed the prejudgment interest award in Lovejoy, this Court noted that the insurer will not delay the running of prejudgment interest by simply denying the claim. Moreover, as in the case now before this Court, the amount potentially owed under the contract in Lovejoy was not in dispute; the policy limits were clear. This Court noted that, "the fundamental obligation of an insurance company is payment of insurance proceeds to the insured upon the happening of an event covered under the policy." Id. When that event occurred, the insurer's duty was triggered. Thus, this Court concluded that prejudgment interest was properly assessed from that date. Id. at 477.
When it concluded that the interest on Appellee's claim became "due and owing" as of April 6, 1998, the trial court found that Appellant was clearly put on notice regarding the existence of Appellee's claim:
 "The co-defendant, Danielle Taylor, entered a plea to aggravated vehicular homicide pursuant to her operations of the motor vehicle that caused the death of Curtis Mays. This certainly put Allstate Insurance Company on notice that there was an obligation to enter into settlement negotiations in this case, which it failed to do."
(Amended Judgment Entry, September 19, 2000). Further, the court noted that, "no offer of settlement or payment by Allstate was ever made, even on the date of and during the trial." (Amended Judgment Entry, September 19, 2000).
The trial court's reasoning is supported by the record and consistent with the principles guiding the imposition of prejudgment interest under Section 1343.03(A). Accordingly, the trial court did not abuse its discretion when it directed Allstate to pay prejudgment interest from April 6, 1998.
Appellant's second assignment of error maintains that,
 "The trial court erred in applying the `per accident' limits when Allstate's policy of insurance clearly and unambiguously states that the derivative claims of James And Mary Mays were consolidated and subject to a single per person limit of $100,000."
Appellant argues that the $200,000 awarded Appellee in this case was calculated erroneously, because the Mays' uninsured motorist policy plainly limits derivative claims for death or bodily injury by subjecting them to a total "per person" limit of $100,000. Based on the record, this assignment of error has merit.
When it reduced the $250,000 jury verdict to $200,000, the trial court reasoned that Allstate's uninsured motorist provision was ambiguous with respect to whether Appellee's claims were consolidated under its "per person" limit or distinct under the $300,000 "per accident" limits. The trial court found that such an ambiguity entitled the Mays to collect a total of $200,000 under the "per accident" provision for the wrongful death of their son.
Whether, or the extent to which, an individual is covered under a particular insurance policy is an issue of law. Gomolka v. StateAutomobile Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167. Issues of law are subject to de novo review. Hillyer v. State Farm Mut. Auto Ins. Co. (1999), 131 Ohio App.3d 174, 175.
As in any contract dispute, this Court examines insurance policies to ascertain the intent of the parties who entered into it and to settle upon a reasonable interpretation of disputed terms in a manner calculated to give the agreement its intended effect. Burris v. Grange Mutual Ins.Co. (1989), 46 Ohio St.3d 84, 89. Terms under the policy are given their plain and ordinary meaning. Jones v. Cincinnati Ins. Co. (June 21, 1999), Mahoning Co. App. No. 96 CA 43, unreported. Where the policy language is clear and unambiguous, this Court has no authority to rewrite or otherwise construe the language the parties have adopted. Gomolka,supra, at 168.
The policy provisions at issue here are clear and unambiguous. They clearly limit the Mays' total recovery for the death of their son to $100,000. The Allstate automobile insurance policy issued to the Mays provides for and limits uninsured motorist coverage in a section entitled: "The Uninsured Motorists Coverage — Bodily Injury." That section explicitly limits uninsured motorist coverage to the maximum amount allowed under the policy for any one accident. (Allstate Auto Ins. Policy, p. 13.)
Under Allstate's Auto Policy Declaration, the above referenced policy limits are $100,000 per person with a maximum of $300,000 per occurrence. (See, Plaintiff's Reply to Allstate's Alternative Motion for Judgment Notwithstanding the Verdict or New Trial, Exh. D, p. 1). The policy defines each person and each accident as follows:
 "1. `[E]ach person' is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including damages sustained by anyone else as a result of that bodily injury.
 "2. `[E]ach accident' is the maximum we will pay for damages arising out of bodily injury in any one motor vehicle accident. This limit is subject to the limit for `each person.'"
(Allstate Auto Ins. Policy, p. 13). Bodily injury under this policy is expressly defined as, "physical harm to the body, sickness, disease or death." (Allstate Auto Ins. Policy, p. 3).
The policy also states that liability limits may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available regardless of the number of policies or vehicles involved, people covered or claims and premiums paid. Then, in bold letters, the policy expressly precludes an insured from stacking or aggregating uninsured motorist insurance. (Allstate Auto Ins. Policy, p. 13).
This Court recognizes that under R.C. § 2125.02(A)(1), both parents of wrongful death victims are presumed to suffer damages. Moore v. StateAuto (2000), 88 Ohio St.3d 27. That section, however, must be read in light of R.C. § 3937.18(H), which states:
 "Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section [uninsured or underinsured] and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident may, notwithstanding Chapter 2125 of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy."
The aforementioned provision explicitly gives insurance companies the authority to limit derivative claims to a single "per person" limit.
Such an approach is consistent with that taken in connection with a similar policy provision in Kleinsmith v. Allstate Ins. Co. (December 22, 2000), Richland App. No. 00 CA 14-2, unreported. In Kleinsmith, after sustaining injury in an automobile accident, the plaintiff recovered the $12,500 liability limits of the other driver's policy. The plaintiff, his wife and the couple's two children then sought underinsured benefits through the plaintiff's policy with Allstate. The Allstate policy provided uninsured/underinsured motorist benefits in the amount of $12,500 per person and $25,000 per accident. Allstate denied the claim because there was only one person injured in the accident and he had already received his $12,500 per person limit under other driver's insurance policy. The trial court agreed and granted summary judgment in favor of the insurance company.
The trial court's summary judgment decision in Kleinsmith was affirmed on appeal. In so holding, the reviewing court concluded that the policy language used, virtually identical to that employed by Allstate in the instant case, "clearly and unambiguously limits coverage for all claims arising out of and resulting from the bodily injury sustained by one person to the single `each person' limit of $12,500.00." Id. at p. 4.
This Court simply cannot agree with Appellee's insistence that the policy is confusing with regard to policy limits. The plain language used in the provision at issue both in Kleinsmith and in the instant case unequivocally bars the insured from collecting on derivative claims for bodily injury beyond the established per person limit.
While this appeal was pending, the Ohio Supreme Court affirmed the appellate court decision in Kleinsmith. The order memorializing that decision reflects that the Supreme Court reached its conclusion in light of its previous decisions in Littrell v. Wigglesworth (2001),91 Ohio St.3d 424, and Clark v. Scarpelli (2001), 91 Ohio St.3d 271. SeeKleinsmith v. Allstate Ins. Co. (July 5, 2001), 92 Ohio St.3d 218.
Though neither Clark nor Littrell tackle the same factual circumstances or coverage provisions at issue in the instant case, both decisions reflect the Supreme Court's favorable treatment of policy language restricting coverage. In Clark, the court found that insurance policy language clearly and unambiguously limited certain coverage. InLittrell, the court found that based on Clark, the total underinsured motorist recovery available to an insured could not exceed the limits provided for uninsured motorist coverage under the policy agreement.Littrell, supra, at 430.
Accordingly, Appellant's second assignment of error is sustained. This Court adopts the reasoning and approach taken in the Kleinsmith decision and thereby concludes that the trial court erred to the extent that it concluded that Appellee was entitled to recover under the $200,000 per occurrence policy limits where the per person limit was clear from the policy.
In accordance with the aforementioned discussion, this Court overrules Appellant's first and third assignments of error, but finds that its second assignment of error is meritorious. Consequently, the decision of the Mahoning County Court of Common Pleas is affirmed in part and modified to reflect this Court's determination that under the limits of the Allstate Policy, Appellee is only entitled to damages in the amount of $100,000.
Vukovich, P.J., concurs.
DeGenaro, J., concurs.