[Cite as *State v. Prater*, 2021-Ohio-3988.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-308 |
| | | (C.P.C. No. 16CR-927) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Frederick A. Prater, Jr., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 9, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Frederick A. Prater, Jr., appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In February 2016, Prater was indicted on four counts of felonious assault with firearm specifications and one count of possessing a weapon while under disability. Prater pleaded not guilty and the case went to trial in March 2017. As discussed in a prior appeal in this case, the evidence demonstrated that, on May 11, 2015, a man emerged from a vehicle and shot his firearm one or more times at a group of men and one woman in the vicinity of 1117 McAllister Avenue. *See State v. Prater*, 10th Dist. No. 17AP-374, 2018-Ohio-932 ("*Prater I*"). A bullet struck the female, Stephanie Norvett, in the abdomen. There was no

dispute that Norvett and two of the men, Lewis Pettey and Darius White, were the victims of felonious assault. Thus, the primary issue at trial was identity—namely, whether Prater was the shooter. As to this issue, the evidence demonstrated that "Norvett identified Prater as the shooter in her initial interview with the police and in writing when she selected him from a photographic lineup." *Id.* at ¶ 22. At trial, Norvett recanted her earlier identification of the shooter, but she did not recant her statement that Prater was seated in the passenger side of the vehicle from which the shooter emerged. *Id.* Pettey and White did not identify Prater as the shooter at trial, but they testified that the vehicle's passenger shot at them. *Id.* The testimony of Pettey and White, "in conjunction with Norvett's, effectively identifies Prater" as the shooter. *Id.* After the presentation of evidence, the jury found Prater guilty of three counts of felonious assault with firearm specifications and not guilty as to the remaining felonious assault count. The trial court found Prater guilty of the weapon under disability count and sentenced him to a total of 23 years in prison for the offenses.

{¶ 3} Isawan Foster, who was in the vehicle with Prater, was tried with Prater on essentially the same crimes; however, the jury acquitted Foster. The third person in the vehicle, Sherita Carter, was not identified by name at trial. Prater's trial counsel subpoenaed Carter to appear as a trial witness, but she did not appear. The trial court issued a warrant for her arrest. Because Carter ultimately did not appear and authorities were unable to locate and arrest her, Prater's counsel requested the trial be continued until she could be found. The trial court declined to delay proceedings, and the trial concluded without Carter testifying. Prater's counsel did not proffer Carter's expected testimony, except to assert that she was the third person in the vehicle and was "certainly in a position to see what was going on." (Tr. Vol. 3 at 368-69.)

{¶ 4} On April 3, 2017, within two weeks of the return of guilty verdicts, but before the trial court entered judgment, Prater's trial counsel filed the first motion for new trial based on the discovery of new evidence. The motion alleged the discovery of evidence that Foster had bragged that he shot Norvett, that Foster's threats against Carter had prevented her from testifying, and that Carter had told a detective that Foster, and not Prater, was the shooter. On April 25, 2017, the day the trial court entered judgment of conviction and sentence, it also summarily denied Prater's April 3, 2017 new trial motion. On May 19, 2017, and five days prior to filing a notice of appeal from the trial court's judgment of

conviction and sentence, Prater's first appellate counsel filed a motion for new trial, citing the discovery of a recorded telephone conversation occurring after trial in which Foster stated he shot Norvett. On June 15, 2017, the trial court summarily denied this second motion for new trial.

{¶ 5} In resolving Prater's direct appeal, this court rejected his challenge to the trial court's admission into evidence of an unclear video of the shooting events, found no error in the trial court's refusal to merge the felonious assault counts, and held that his convictions were sufficiently supported by the evidence and not against its manifest weight. *Prater I in passim.* Accordingly, this court affirmed. *Id.* Prater applied to reopen his appeal, arguing his appellate counsel was ineffective in not assigning errors relating to the trial court's refusal to delay the trial due to an uncooperative witness and in denying his motions for new trial. Because Prater did not appeal the denial of his new trial motions and because this court found the uncooperative witness issue could not be adequately addressed by the appellate record, his application for reopening was denied. *State v. Prater*, 10th Dist. No. 17AP-374 (Nov. 6, 2018) (memorandum decision) ("*Prater II*").

{¶ 6} In July 2018, and prior to this court denying Prater's application to reopen, he filed a timely petition for postconviction relief pursuant to R.C. 2953.21. He alleged he received ineffective assistance of counsel and therefore suffered an infringement of his constitutional rights, rendering void the judgment of conviction and sentence. Prater claimed he was prejudiced by his counsel's deficient performance as to the filing of his new trial motions. In October 2018, the trial court denied Prater's petition without first holding an evidentiary hearing. Prater appealed. This court reversed the trial court's judgment upon finding that the trial court abused its discretion in denying the petition without a hearing because Prater's petition provided evidentiary materials that contained sufficient operative facts which, if believed, would establish deficient performance of counsel and resulting prejudice as to the motions for new trial. *State v. Prater*, 10th Dist. No. 18AP-818, 2019-Ohio-2535, ¶ 49 ("*Prater III*"). Consequently, this court remanded the matter to the trial court with instructions to hold a hearing on Prater's petition. *Id.* at ¶ 58.

{¶ 7} As instructed, the trial court held an evidentiary hearing on Prater's petition. In May 2020, the trial court denied the petition, holding that Prater failed to demonstrate "that there is a reasonable probability that, but for counsels' alleged errors in submitting

the April 3, 2017 and May 19, 2017 motions for new trial, the result of the proceeding would have been different." (Decision & Entry at 9-10.)

{¶ 8} Prater timely appeals.

## II. Assignment of Error

{¶ 9} Prater assigns the following error for our review:

> The denial of defendant-appellant's petition for post-conviction relief was an abuse of discretion.

## III. Discussion

{¶ 10} In his sole assignment of error, Prater alleges the trial court erred in denying his petition for postconviction relief. Prater presents two main arguments in support of his assignment of error. First, he argues the trial court did not follow the law of the case set forth in *Prater III* concerning the deficient performance prong of the *Strickland* standard for resolving Sixth Amendment ineffective assistance claims. Second, he argues the trial court's analysis of the prejudice prong of that standard improperly did not focus on whether the evidence presented at the postconviction petition hearing probably would have created a reasonable doubt at trial that Prater was the shooter. Conversely, the state argues the trial court lacked subject-matter jurisdiction to consider Prater's postconviction petition, and, even if it had jurisdiction, it properly denied the petition. While we disagree with the state's jurisdiction argument, we agree the trial court did not err in denying the petition.

{¶ 11} We first address the jurisdiction issue raised by the state. Subject-matter jurisdiction is a court's power to hear and decide a particular class of cases and is therefore a threshold issue. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19; *see Turner v. Ohio Dept. of Rehab. & Corr.*, 180 Ohio App.3d 86, 2008-Ohio-6608, ¶ 9 (10th Dist.) ("Whether there is subject matter jurisdiction is a threshold question that will prevent a court from reaching the underlying issues in a case."). Subject-matter jurisdiction cannot be waived and may be raised at any time. *State ex rel. Bond v. Velotta Co.*, 91 Ohio St.3d 418, 419 (2001). Our review of this issue is de novo. *Great Lakes Courier Serv., LLC v. State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 16AP-2, 2016-Ohio-3143, ¶ 6.

{¶ 12} Prater generally challenges the trial court's denial of his postconviction petition filed pursuant to R.C. 2953.21(A)(1)(a), which provides that "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or

infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.23 provides a court "may not entertain" an untimely or successive postconviction relief petition unless the requirements of R.C. 2953.23(A)(1) or (2) are met. *See* R.C. 2953.21(A)(2) (Subject to certain exceptions in R.C. 2953.23, a trial court may entertain a petition for postconviction relief only if it is filed no later than 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal.).

{¶ 13} The state does not allege Prater's postconviction petition was untimely or successive. Instead, it argues the trial court had no authority to consider the petition because Prater had no constitutional right to counsel as to the new trial motions. We are unpersuaded. "[T]he underlying merits of a claim are distinct from the question of the court's statutory or constitutional power to adjudicate the case." *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. No. 14CA010596, 2015-Ohio-435, ¶ 14. Prater alleged he received ineffective assistance of counsel in violation of his constitutional rights so as to void the judgment of conviction and sentence. Under the plain terms of R.C. 2953.21, the trial court had the power to hear this claim. Furthermore, in regard to a defense counsel's deficient performance in connection with the filing of a motion for new trial, in *State v. Burke*, 10th Dist. No. 03AP-1241, 2004-Ohio-6519, this court specifically held that the defendant's appellate counsel's failure to timely file a motion for new trial based on an expert witness's recanting of his testimony was defective and prejudicial and therefore violated his constitutional rights. Therefore, we find the trial court had subject-matter jurisdiction to consider and rule on the merits of Prater's postconviction petition claim.

{¶ 14} As to the merits, we find the trial court did not abuse its discretion in denying the petition. A petition for postconviction relief is a collateral civil attack on a criminal judgment and "a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record." (Internal quotations omitted.) *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 8. Thus, a postconviction petition does not provide a petitioner a second opportunity to

litigate his or her conviction. *Id.*, citing *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 23. R.C. 2953.21 affords a petitioner postconviction relief " 'only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution.' " *Id.*, quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph four of the syllabus. Because the trial court is in the best position to view and weigh testimony, when we consider a trial court's determinations based on evidence obtained during a postconviction hearing, we defer to the trial court's findings and apply an abuse of discretion standard. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 46-58. *See State v. Neil*, 10th Dist. No. 18AP-1001, 2019-Ohio-3793, ¶ 12 ("An appellate court applies an abuse of discretion standard in reviewing a trial court's denial of a petition for post-conviction relief."). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} As noted above, Prater's postconviction petition alleged he received ineffective assistance of counsel in violation of his constitutional rights. In order to prevail on a claim of ineffective assistance of counsel, Prater needed to satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this test, a defendant must demonstrate that his counsel's performance was deficient. *Id.* This first prong requires the defendant to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If the defendant can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. And a court is not required "to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland* at 697.

{¶ 16} Prater contends his trial and appellate counsel deficiently performed by filing new trial motions that did not sufficiently communicate the substance of newly discovered evidence that was received after the trial. Relatedly, he argues that because this court, in *Prater III*, resolved this issue and ruled that his trial and appellate counsels were deficient, the trial court erred in not following the law of the case. He also argues these deficiencies prejudiced him and therefore he met both prongs of the *Strickland* test.

{¶ 17} First, we reject Prater's assertion that the trial court failed to adhere to the law of the case set forth in *Prater III*. "The law of the case doctrine provides that 'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' " *State v. Harding*, 10th Dist. No. 10AP-370, 2011-Ohio-557, ¶ 16, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This doctrine "is rooted in principles of res judicata and issue preclusion [and] ensures consistent results in a case, avoids endless litigation by settling the issues, and preserves the constitutional structure of superior and inferior courts." (Internal quotations and citations omitted.) *State v. Norman*, 10th Dist. No. 20AP-427, 2021-Ohio-2389, ¶ 14. Prater's law of the case assertion assumes this court in *Prater III* reached a conclusion as to whether he demonstrated the deficient performance prong of the *Strickland* test. But Prater misreads *Prater III*. In that decision, this court analyzed the operative facts contained in the materials submitted with Prater's postconviction petition and found that, "if believed," that evidence would establish his counsel's deficient performance in connection with the new trial motions. *Prater III* at ¶ 44, 49. The question before this court was whether Prater was entitled to a hearing on his postconviction petition. In resolving that issue, this court did not find that his counsel was deficient.

{¶ 18} Without deciding the issue, we assume Prater's trial and appellate counsel were deficient in not adequately conveying to the trial court the information they received post-trial pertinent to the identity of the shooter. However, as to the second prong of the *Strickland* test, we find the trial court reasonably concluded that Prater was not prejudiced by any deficient performance of his counsel.

{¶ 19} To show prejudice, Prater needed to establish, at a minimum, that there was a reasonable probability that the trial court would have granted his request for a new trial if his counsel had not deficiently prepared the new trial motions based on newly discovered evidence. Because awarding a new trial is within a trial court's discretion, as a practical matter, Prater needed to convince the trial court he was entitled to that relief. Under Crim.R. 33(A)(6), a trial court may grant a motion for new trial based on the discovery of new evidence material to the defense that the defendant could not, with reasonable diligence, have discovered and produced at trial. *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 5. " 'Newly discovered evidence' is 'evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant.' " *State v. Holzapfel*, 10th Dist. No. 10AP-17, 2010-Ohio-2856, ¶ 20, quoting *State v. Love*, 1st Dist. No. C-050131, 2006-Ohio-6158, ¶ 43.

{¶ 20} To warrant the granting of a motion for new trial in a criminal case based on newly discovered evidence, the defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. A trial court's decision to grant a new trial "is an extraordinary measure that should be used only when the evidence presented weighs heavily in favor of the moving party." *State v. Price*, 8th Dist. No. 92096, 2009-Ohio-480, ¶ 14. "In the context of motions for new trial, a trial court is the trier of fact who must decide if there is a strong probability of a different result." *State v. Lawrence*, 2d Dist. No. 25623, 2014-Ohio-417, ¶ 35. A trial court's decision to grant or deny a motion for a new trial based on newly discovered evidence is within the sound discretion of the trial court. *State v. Ibrahim*, 10th Dist. No. 17AP-557, 2020-Ohio-3425, ¶ 28. *See Lawrence* at ¶ 41 ("In considering whether there is a strong probability of a different result, a trial court may exercise its discretion to evaluate the credibility of the evidence that a jury is likely to hear."); *see also Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) (factfinder is able to view witness demeanor, gestures and voice inflections, and use these observations in weighing credibility).

{¶ 21} Here, the trial court on remand held an evidentiary hearing on the matter as instructed. At the hearing, the trial court heard testimony from Ashley Prater, James Watson, Esq. (Prater's trial counsel), Sherita Carter, and Maurice Yates. The trial court also admitted into evidence affidavits of Ashley Prater and Carter, audio recordings of jail calls between defendant Prater and Foster, a video recording of a police interview with Carter, and two Columbus Division of Police informational summaries of interviews with Carter. The trial court considered the credibility of the potentially exculpatory evidence presented at the postconviction petition hearing, and it was unconvinced that, but for any deficient performance of Prater's counsel, the result of the proceeding would have been different. Citing *State v. Beavers*, 2d Dist. No. 22588, 2009-Ohio-5604, Prater argues the trial court improperly gave no weight to either the evidence that Foster admitted to the shooting or Carter's testimony that Foster, not Prater, was the shooter. According to Prater, the trial court's credibility analysis constituted a usurpation of its authority. And he argues the trial court failed to adequately consider the testimony of Yates, who also testified that Foster, not Prater, was the shooter.

{¶ 22} We are unpersuaded by Prater's reliance on Yates' hearing testimony. Yates testified that he witnessed the shooting and Foster was the one that fired a weapon, not Prater. But, as the trial court noted, Yates was disclosed as a witness in a pre-trial filing, and he testified that he spoke with Watson prior to trial. Because Yates' account of what occurred was not newly discovered evidence, Prater's reliance on Yates' testimony is unavailing.

{¶ 23} We also find the trial court reasonably rejected the evidence that Foster had admitted to being the shooter after the trial. Prater's wife, Ashley Prater, testified regarding the content of post-trial recorded jailhouse telephone calls involving her, Prater, and Foster. In a July 4, 2018 affidavit, Ashley Prater transcribed portions of those two telephone calls. She averred that, during those conversations Foster admitted that he was the shooter and expressed remorse that Prater was convicted for the shooting. At the postconviction petition hearing, Ashley Prater testified consistent with her affidavit regarding the content of those conversations. The recorded conversations themselves were also admitted into evidence. In the trial court's review of Ashley Prater's averments and testimony, it noted that her level of interest and bias was great because of her marriage to Prater. The trial

court further noted that, even if Ashley Prater's interpretation of those conversations were accepted, Foster had already been acquitted when he said he was the shooter, and therefore he was protected from any retrial. In *State v. Howard*, 8th Dist. No. 101359, 2015-Ohio-2854, ¶ 55, the court stated that "allowing the testimony of a codefendant who has been sentenced as 'newly discovered' evidence would encourage perjury from codefendants who have determined that testifying is no longer harmful to themselves." *See State v. McGlothin*, 1st Dist. No. C-060145, 2007-Ohio-4707, ¶ 41 (holding that exculpatory testimony of a sentenced codefendant is not a basis for granting a new trial). Citing *Howard*, the trial court found Foster's admission not credible because Foster could freely place blame on himself, knowing he cannot be retried after being found not guilty, in an effort to help codefendant Prater. Thus, the trial court did not consider the evidence of Foster's admission to carry any weight. Because this reasoning is sound and supported in the case law, we uphold it.

{¶ 24} Similarly, we reject Prater's argument that the trial court's analysis of Carter's credibility was flawed. To address this argument, we first outline Carter's pertinent averments and testimony presented at the postconviction petition hearing as well as the Columbus police informational summaries and the video recording of Carter's second police interview. In Carter's affidavit, dated July 4, 2018, she averred that she was willing to testify that Foster, not Prater, fired the weapon. She also averred that, during the trial, she informed Prater's trial counsel, Watson, what she witnessed. Lastly, she averred that she did not appear at trial because she was threatened, but she did not, during the trial, inform Watson of her reason for not appearing.

{¶ 25} At the hearing, Carter testified that she saw Foster shooting, and she was certain that Prater did not fire any weapon. She acknowledged, however, that she first told the police that she did not see anyone fire a weapon. Carter also initially testified that Foster was in the passenger seat of the vehicle, but then testified that he was in the driver's seat. She further testified that she told Watson and the police that Foster, not Prater, was the shooter, and that she informed Watson during the trial that she would not testify because of threats against her. When questioned about her statement in her July 4, 2018 affidavit that she did not tell Watson about the threats during trial, she testified that "as the trial

went on, he knew about the threats," and that she "told Mr. Watson about the threats before [Prater] even went to trial."  (Oct. 24, 2019 Tr. at 62, 97.)

{¶ 26} The Columbus police informational summaries admitted at the hearing indicate the following.  On the night of the shooting, Carter initially told the police that she did not see or hear any gunshots, but that she just happened to walk upon the bullet-stricken female lying on the ground near Carter's broken-down vehicle.  Hours later, in a second interview with police, Carter said she did see the shooting.  During that second interview, she indicated that she, Foster, and Prater were in her vehicle during the evening of May 11, 2015, when it broke down.  She was in the vehicle's rear passenger seat, Foster was in the driver's seat, and Prater was in the front passenger seat.  They borrowed a telephone from someone, but Prater and Foster became agitated with that person.  At some point, Prater threw the telephone and Foster exited the vehicle and shot at the telephone owner.  He missed and struck Norvett.  Carter was looking at Foster when he was shooting, and she acknowledged that Prater could have fired a weapon without her seeing that conduct.  The video recording of Carter's second police interview confirms her statement that she did not know whether Prater fired a weapon.  At the hearing, however, Carter disputed that she told the police in the second interview that she was not sure whether Prater could have also fired a weapon.

{¶ 27} Based on the evidence presented, the trial court found that Carter was not credible, citing contradictions involving her own averments and testimony and other evidence.  In particular, the trial court noted that even though Carter testified that she was certain she told the police that Foster was the shooter in her first interview with police, the police informational summary of that interview indicated that she initially said she saw nothing.  When confronted with this inconsistency, Carter acknowledged that she had lied. The trial court also noted that, on the significant issue of the positioning of the vehicle occupants (victim testimony at trial indicated that the vehicle's front passenger shot at them), Carter first testified at the hearing that Foster was in a passenger seat of the vehicle, and then testified that he was in the driver's seat. The trial court further noted that Carter averred that she first told Watson after the trial that she had been threatened, but then testified at the hearing that she had no contact with Watson after the trial.  Based on these contradictions, as well as its observations of Carter during her testimony at the hearing, the

trial court found her not credible.  This explanation for rejecting Carter's testimony was reasonable and, to the extent possible, supported in the record.

{¶ 28}  Moreover, we find the trial court did not usurp its authority in making these credibility determinations.  On this issue, Prater's reliance on the Second District Court of Appeals decision in *Beavers* is unavailing.  Prater asserts that *Beavers* stands for the principle that an appellate court must reverse the denial of a new trial motion if the trial court's credibility review is not limited to determining whether the new evidence reasonably could be believed to create reasonable doubt.  We disagree.  In *Beavers*, the court held the trial court abused its discretion in overruling the defendant's motion for a new trial because there was a strong probability that the new evidence would have created reasonable doubt for the jury.  *Beavers* at ¶ 37.  Here, we find the trial court appropriately evaluated the credibility of potentially exculpatory evidence as part of its review of the merits of Prater's claim that he was prejudiced by his counsel's performance relating to the filing of new trial motions.  And, because the trial court's reasoning was sound and supported by law and the record, we defer to that analysis given our standard of review in this context.  *See Lawrence* at ¶ 37 ("Implicit in [the new trial standard] is the fact that trial courts must evaluate credibility in deciding the motion."); *Gondor* at ¶ 55 ("The postconviction judge sees and hears the live postconviction witnesses, and he or she is therefore in a much better position to weigh their credibility than are the appellate judges."); *State v. T.S.*, 10th Dist. No. 20AP-159, 2021-Ohio-2203, ¶ 33, 37 (noting that this court must defer to the trial court's resolution of a new trial motion unless it lacks a "sound reasoning process" and finding that the "trial court's reasoning was not unsound or unreasonable" when it discounted the credibility of the new evidence).  Thus, we reject Prater's contention that the trial court usurped its authority in its review of the credibility of the postconviction petition hearing evidence.

{¶ 29} Based on the foregoing, we cannot conclude the trial court acted unreasonably, unconscionably, or arbitrarily in denying Prater's postconviction petition.  Because the trial court did not abuse its discretion in denying Prater's postconviction petition, we overrule his sole assignment of error.

## IV. Disposition

{¶ 30} Having overruled Prater's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, J., concurs.
DORRIAN, P.J., dissents.

DORRIAN, P.J., dissenting.

{¶ 31} I respectfully dissent.

{¶ 32} First, however, I note that I agree with the majority that the trial court had subject-matter jurisdiction to consider and rule on the merits of Prater's postconviction petition claim. (Majority opinion at ¶ 13.)

{¶ 33} Second, although the majority has assumed deficient performance without deciding the issue, I would find Prater's trial and first appellate counsel were deficient in not adequately conveying to the trial court the information they received post-trial pertinent to the identity of the shooter. In particular, I would find deficient performance in not conveying the video of the second police interview of Sherita Carter in which she tells police that Prater was not the shooter. (*See* Deft.'s Ex. E.) I would also find deficient performance in not conveying the contents of the recording of the phone calls from jail between Prater and Isawan Foster. (*See* Deft.'s Ex. D.) Regarding the majority's discussion of *State v. Howard*, 8th Dist. No. 101359, 2015-Ohio-2854, as it relates to the testimony and affidavit of Ashley Prater, I agree that, when considering credibility and weight, a trial court may consider that a witness or affiant is an acquitted or already sentenced co-defendant of a defendant. However, I would not hold that such a factor alone is dispositive as the sole basis for a trial court to accord no credibility or weight to the same. I would hold that the trial court must still conduct an assessment considering other credibility and weight factors as well. (*See* Majority opinion at ¶ 23.)

{¶ 34} Lastly, I would find there was a reasonable probability that the trial court would have granted Prater's request for a new trial if his counsel had not deficiently prepared the new trial motions based on the newly discovered evidence referenced above.

{¶ 35} For these reasons, I respectfully dissent. I would sustain appellant's sole assignment of error and reverse the decision of the trial court.