LENOX, INCORPORATED v. E. NORRIS TOLSON, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE

No. 17A01

(Filed 20 July 2001)

**Taxation— liquidation of out-of-state subsidiary—nonbusiness income**

The Court of Appeals correctly remanded a tax refund action for summary judgment in favor of plaintiff where plaintiff was a New Jersey corporation which decided to dispose of a subsidiary, ArtCarved, by selling all of its assets; the sale of ArtCarved completed plaintiff's involvement in the jewelry business and plaintiff has not reentered that business; plaintiff did not retain any of the liquidation proceeds for use in its ongoing operations but distributed all of those proceeds to its sole shareholder within 24 hours of receipt; and defendant classified the gain resulting from the sale as business income and assessed corporate income tax. The net income of a multistate corporation is divided into two classes, business income, which is taxable, and nonbusiness income, which is allocated solely to the state most closely associated with the income-generating asset. "Business income" is determined by the transactional and the functional tests, which are separate and independent tests. Under the functional test, business income includes income from property if the acquisition, management, and disposition of the property constitute integral parts of the corporation's regular course of business. When a transaction involves a complete or partial liquidation and cessation of a company's particular line of business and the proceeds are distributed to shareholders rather than reinvested in the company, any gain or loss generated from that transaction is nonbusiness income under the functional test; specific language in *Polaroid Corp. v. Offerman,* 349 N.C. 290, is disavowed. In this case, nonbusiness income would be allocated solely to New Jersey, the parties agree that the income from the sale does not satisfy the transactional test, the disposition of ArtCarved did not generate business income based on the functional test because liquidation of this asset was not a regular part of Lenox's trade or business, and Lenox is due a refund.

Justice PARKER dissenting.

Justice MARTIN joins in this dissenting opinion.

**LENOX, INC. v. TOLSON**

[353 N.C. 659 (2001)]

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 140 N.C. App. 662, 538 S.E.2d 203 (2000), reversing an order for summary judgment for defendant[1] entered 14 June 1999 by Hight, J., in Superior Court, Granville County, and remanding for entry of summary judgment for plaintiff. Heard in the Supreme Court 14 May 2001.

*Wilson & Iseman, L.L.P., by G. Gray Wilson; James M. Iseman, Jr.; and Kevin B. Cartledge, for plaintiff-appellee.*

*Roy A. Cooper, Attorney General, by Kay Linn Miller Hobart, Assistant Attorney General, for defendant-appellant.*

WAINWRIGHT, Justice.

Lenox, a New Jersey-based corporation, operates as a conglomerate corporation with multistate operating divisions, including North Carolina. Since 1983, Lenox has been a wholly owned subsidiary of the Brown Forman Corporation. At all relevant times, Lenox has been engaged in the business of manufacturing and selling numerous consumer products, including fine china, fine crystal, dinnerware, silverware, collectibles, candles, luggage and fine jewelry. In 1970, Lenox established its ArtCarved subsidiary division to manufacture and sell fine jewelry. ArtCarved was a functionally and financially distinct entity from Lenox. ArtCarved, which had its principal place of business in New York, maintained its own centralized management and financial systems apart from those of Lenox and had its own president, chief financial officer, controller and accounting and human resources staff. In addition, ArtCarved had its own operating and reserve accounts and administered its own payables, receivables and payroll.

By 1988, the ArtCarved subsidiary of Lenox had not been profitable. Pursuant to a corporate restructuring plan, Lenox decided to dispose of ArtCarved and all associated assets. Lenox liquidated ArtCarved by selling all of its assets. The sale of ArtCarved for $118,341,000 completed the cessation of Lenox's involvement in the sale and manufacture of fine jewelry. Lenox did not retain any of the ArtCarved liquidation proceeds for use in its ongoing business operation and, instead distributed all proceeds by wire transfer within twenty-four hours of their receipt to Lenox's sole shareholder,

1. Pursuant to N.C. R. App. P. 38, E. Norris Tolson has been substituted as Secretary of Revenue, replacing Muriel Offerman.

Brown Foreman Corporation. Lenox has not reentered the jewelry business.

For tax purposes, the sale produced a $46,700,194 gain on which Lenox paid taxes in New Jersey. Lenox classified the gain as "non-business income" on its North Carolina tax return for the fiscal year ending 1988, pursuant to N.C.G.S. § 105-130.4(a)(1) and (a)(5) of the North Carolina Corporate Income Tax Act, and therefore did not pay taxes on this gain. The North Carolina Department of Revenue (DOR), however, reclassified the gain as business income and assessed corporate income tax in the amount of $469,540, which Lenox paid under protest. Lenox then filed this tax refund action to recover on its claim of erroneous taxation.

In order to achieve uniform taxation among states, North Carolina modeled its Corporate Income Tax Act, N.C.G.S. ch. 105, art. 4, pt. 1 (1999), after the income classification scheme in the Uniform Division of Income for Tax Purposes Act (UDITPA). *Polaroid Corp. v. Offerman*, 349 N.C. 290, 294, 507 S.E.2d 284, 288 (1998), *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999). Under this uniform statute, the net income of a multistate corporation, such as Lenox, is divided into two classes for taxation purposes: (1) "business income," which is apportioned among all states in which the corporation transacts business, N.C.G.S. § 105-130.4(i); and (2) "non-business income," which is allocated solely to the state most closely associated with the income-generating asset, N.C.G.S. § 105-130.4(h), which in the present case would be New Jersey. *See Polaroid*, 349 N.C. at 294, 507 S.E.2d at 288. The Act defines "business income" as follows:

> (1) "Business income" means income arising from transactions and activity in the regular course of the corporation's trade or business and includes income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business operations.

> . . . .

> (5) "Nonbusiness income" means all income other than business income.

N.C.G.S. § 105-130.4(a)(1), (5).

Recently, in a case of first impression, this Court attempted to clarify the scope of the statutory definition of business income. *Polaroid*, 349 N.C. 290, 507 S.E.2d 284. In *Polaroid*, this Court held that the plain language of the statute contains two separate and independent tests for determining taxable business income, namely the "transactional" test and the "functional" test. *Id.* at 301, 507 S.E.2d at 293. The "transactional" test, which is the first part of the statutory definition, focuses on "income arising from transactions and activity in the regular course of the corporation's trade or business." N.C.G.S. § 105-130.4(a)(1); *accord Polaroid*, 349 N.C. at 295, 507 S.E.2d at 289. The "functional" test, which is the second part of the statutory definition, alternatively focuses on "income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business operations." N.C.G.S. § 105-130.4(a)(1); *accord Polaroid*, 349 N.C. at 296, 507 S.E.2d at 289. If either test is satisfied, the income in question constitutes taxable business income. *See Polaroid*, 349 N.C. at 300, 507 S.E.2d at 292.

The transactional test looks to the particular transaction generating the income to determine whether that transaction was done in the ordinary and regular course of business. *Id.* at 295, 507 S.E.2d at 289. The frequency and regularity of similar transactions, the former practices of the business, and the taxpayer's subsequent use of the income are all central to this inquiry. *Id.* In the present case, both parties agree that the income from the sale of ArtCarved does not satisfy the transactional test.

The functional test, on the other hand, focuses on income generated by the corporation's acquisition, management and/or disposition of property that is essential to the corporation's business operations. *Id.* at 301, 507 S.E.2d at 292-93. In this regard, defendant contends that ArtCarved was an integral part of Lenox's regular manufacturing business and that its sales proceeds therefore satisfy the functional test. As such, defendant argues the income from the sale of ArtCarved is "business income" for which Lenox must be taxed in North Carolina. Plaintiff Lenox, however, responds that the sale and liquidation of ArtCarved marked the end of Lenox's involvement in the manufacture and sale of fine jewelry and that the sales proceeds are more properly classified as "nonbusiness income."

Therefore, the sole issue before this Court is whether the liquidation and cessation of a separate and distinct operating division of Lenox constitute "business income" under the functional test of the

statutory definition set forth by the North Carolina Corporate Income Tax Act, N.C.G.S. ch. 105, art. 4, pt. 1. We conclude that the income produced by the sale of ArtCarved should be classified as nonbusiness income.

In the instant case, ArtCarved manufactured and sold fine jewelry as a division of Lenox. The transaction in question divested the whole subsidiary of ArtCarved from Lenox and was a complete liquidation as to ArtCarved and a partial liquidation as to Lenox. Following its disposition of ArtCarved, Lenox did not return to this particular line of business. Additionally, the proceeds of the sale were distributed to the sole shareholder and were not reinvested in the Lenox corporation. The sale of the assets and property that generated this income was not an ordinary event but was one of an extraordinary and infrequent nature.

In *Polaroid*, this Court stated that the extraordinary nature or infrequency of the transaction is irrelevant. *Polaroid*, 349 N.C. at 296, 507 S.E.2d at 289 (citing *Texaco-Cities Serv. Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 269, 695 N.E.2d 481, 485 (1998)). We further stated that if the asset or property was integral to the corporation's regular trade or business, "income resulting from the acquisition, management, and/or disposition of [that asset] constitutes business income regardless of how that income is received." *Id.* at 306, 507 S.E.2d at 296. Based on this specific language from *Polaroid*, defendant contends that this Court must determine that the assets associated with ArtCarved were integral to Lenox's regular trade or business operations and must thereby conclude that the income generated from the sale of those assets must necessarily be classified as business income without further analysis. Defendant is correct that an application of the above language from *Polaroid* would result in such a determination, regardless of how that income is received and regardless of how extraordinary or infrequent the transaction.

The wording of these two sentences in *Polaroid* is a cause of confusion, and we hereby disavow these statements. The statements in *Polaroid* are in direct contravention of the functional test of our statute which requires that the "property constitute [an] integral part[] of the corporation's *regular* trade or business operations." N.C.G.S. § 105-130.4(a)(1) (emphasis added). The source of corporate income cannot be disregarded, as extraordinary or infrequent transactions may well fall outside a corporation's regular trade or business. Again, the focus must be on the asset or property that generated the income and its relationship to the corporation's regular trade or

business. To use such overly broad language as we have just disavowed would render the statutory definition of "nonbusiness income" meaningless.

Resolution of the issue in this case therefore depends upon our statutory interpretation of business income, as defined by the functional test. N.C.G.S. § 105-130.4(a)(1). The principal goal of statutory construction is to accomplish the legislative intent. *Polaroid,* 349 N.C. at 297, 507 S.E.2d at 290. The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, " 'the spirit of the act and what the act seeks to accomplish.' " *Id.* (quoting *Coastal Ready-Mix Concrete Co. v. Board of Comm'rs,* 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980)). If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so. *Id.* When the statute under consideration is one concerning taxation, special canons of statutory construction apply. *In re Denial of Refund of N.C. Inheritance Taxes,* 303 N.C. 102, 106, 277 S.E.2d 403, 407 (1981). If a taxing statute is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved in favor of the taxpayer. *Polaroid,* 349 N.C. at 297, 507 S.E.2d at 290; *Regional Acceptance Corp. v. Powers,* 327 N.C. 274, 277, 394 S.E.2d 147, 149 (1990).

As previously stated, under the "functional test," business income "includes income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute *integral* parts of the corporation's *regular trade or business operations.*" N.C.G.S. § 105-130.4(a)(1) (emphasis added). In *Polaroid,* we defined "integral" as "essential to completeness." *Polaroid,* 349 N.C. at 301, 507 S.E.2d at 292. However, when an asset is sold pursuant to a complete or partial liquidation, the court must focus on more than the question of whether the asset was integral to the corporation's business. *See Laurel Pipe Line Co. v. Pennsylvania,* 537 Pa. 205, 642 A.2d 472 (1994). "Moreover, the phrase 'regular trade or business operations' refers to business operations done in a recurring manner, or at fixed or uniform intervals." *Union Carbide Corp. v. Offerman,* 351 N.C. 310, 315-16, 526 S.E.2d 167, 171 (2000); *see also Black's Law Dictionary* 356 (7th ed. 1999) (regular "course of business" is defined as "[t]he normal routine in managing a trade or business"). Partial or complete liquidations are extraordinary events and are not recurring transactions. *See Kemppel v. Zaino,* 91 Ohio St. 3d 420, 423, 746 N.E.2d 1073, 1076-77 (2001) (The income in question resulted from "a

one-time event that terminated the business"; therefore, it was not considered a "sale in the regular course of a trade or business.").

Furthermore, this Court has specifically noted that liquidation cases are in a separate category because the transaction at issue is a means of ceasing business operations rather than in furtherance thereof. In *Polaroid*, we stated the following in a footnote:

> We do note, however, that cases involving liquidation are in a category by themselves. Indeed, true liquidation cases are inapplicable to these situations because the asset and transaction at issue are not in furtherance of the unitary business, but rather a means of cessation.

*Polaroid*, 349 N.C. at 306 n.6, 507 S.E.2d at 296 n.6.

Therefore, when the transaction involves a complete or partial liquidation and cessation of a company's particular line of business, and the proceeds are distributed to shareholders rather than reinvested in the company, any gain or loss generated from that transaction is nonbusiness income under the functional test. *See generally Laurel Pipe Line*, 537 Pa. at 214, 642 A.2d at 477.

An examination of case law from other UDITPA states that have adopted the functional test is instructive. In *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 543 P.2d 489 (Ct. App.), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975), the taxpayer was engaged in the business of laying small diameter pipelines and laying large diameter pipelines. *Id.* at 522, 543 P.2d at 490. After liquidating its five-year-old large-diameter business pursuant to a major reorganization, the taxpayer continued operating its twenty-five-year-old small-diameter business. *Id.* The *McVean* court held that the

> taxpayer was not in the business of buying and selling pipeline equipment and, in fact, *the transaction in question was a partial liquidation of taxpayer's business and total liquidation of taxpayer's [large-diameter] business*. The sale of equipment did not constitute an *integral* part of the *regular* trade or business operations of taxpayer. This sale contemplated a cessation of taxpayer's [large-diameter] business.

*Id.* at 524, 543 P.2d at 492 (emphases added). Accordingly, the *McVean* court concluded that liquidation of the large-diameter operations produced nonbusiness income. *Id.* We note for the record that fifteen years after the decision in *McVean*, New Mexico amended its

LENOX, INC. v. TOLSON

[353 N.C. 659 (2001)]

definition of "business income" to explicitly include "income from the disposition or liquidation of a business or segment of business." *See* N.M. Stat. Ann. § 7-4-2 (Michie Supp. 2000). New Mexico's current version of UDITPA specifically classifies liquidation proceeds as business income, unlike its predecessor statute and North Carolina's current definition of business income.

More recently, the Pennsylvania Supreme Court classified the proceeds of a liquidation as nonbusiness income under the functional test. *Laurel Pipe Line*, 537 Pa. at 214, 642 A.2d at 477. In that case, the taxpayer, a petroleum pipeline transporter, sold one of its two pipelines while continuing to operate the other. *Id.* at 207, 642 A.2d at 473. The taxpayer distributed the entire after-tax net proceeds to its shareholders, and none of the proceeds were used to generate income or acquire assets for use in future business operations. *Id.* The Pennsylvania Supreme Court disagreed with the contention that "a singular disposition of an unprofitable pipeline is an integral part of the company's regular business because, if not sold, the company's other business would suffer financially." *Id.* at 211, 642 A.2d at 475. Instead, the court held that

> [t]he [disposed] pipeline had been idle for over three years prior to the time that it was sold. In our view, the pipeline was not disposed of as an integral part of [the taxpayer's] regular trade or business. Rather, the effect of the sale was that the company liquidated a portion of its assets. This is evidenced by the fact that the proceeds of the sale were not reinvested back into the operations of the business, but were distributed entirely to the stockholders of the corporation. Although [the taxpayer] continued to operate a second, independent pipeline, the sale of the [other] pipeline constituted a liquidation of a separate and distinct aspect of its business.

*Id.*; *see also Blessing/White, Inc. v. Zehnder*, No. 99L51087, slip op. at 6 (Cook County Ill. Cir. Ct., Jan. 24, 2001) (Lanigan, J.) (When a business was completely liquidated and the proceeds distributed to its shareholder, the income produced was not business income, in that "BWI did not use the proceeds of the liquidation to continue its business because it had no business to continue.").

In *Laurel Pipe Line*, the Pennsylvania Supreme Court factually distinguished an earlier liquidation case in which the taxpayer sold its idle and unprofitable Philadelphia plant. 537 Pa. at 210-12, 642 A.2d at 475-76; *see Welded Tube Co. of Am. v. Pennsylvania*, 101 Pa.

Commw. 32, 515 A.2d 988 (1986). In *Welded Tube*, the taxpayer used the sales proceeds in ongoing operations by expanding its Chicago plant and retiring corporate debt. *Welded Tube*, 101 Pa. Commw. at 38, 515 A.2d at 991. There was "no suggestion on the record that the closing of the facility contemplated the cessation of operations" and the court held that this sale generated business income. *Id.* at 45-46, 515 A.2d at 994-95.

The Illinois Supreme Court's decision in *Texaco-Cities Serv. Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 695 N.E.2d 481 (1998), to consider the taxpayer's liquidated assets business income is easily distinguishable from the case at hand. In *Texaco-Cities*, the taxpayer, a pipeline petroleum transporter, sold major segments of its pipeline assets and related realty, but continued to transport petroleum by pipeline and reinvested the sales proceeds therein. *Id.* at 265, 273, 695 N.E.2d at 483, 487. The taxpayer classified the gain as nonbusiness income, contending that the "sale was an extraordinary event and more in the nature of a cessation than a furtherance of business." *Id.* at 266, 695 N.E.2d at 483. The Illinois Supreme Court disagreed and classified the gain as business income under the functional test. *Id.* at 273, 695 N.E.2d at 486. The court in that case distinguished *Laurel Pipe Line* by stating:

> The court in *Laurel Pipe Line* found that the sale was a liquidation of a "separate and distinct aspect" of Laurel's business, namely, all of its pipeline operations in a specific geographical region. *Laurel Pipe Line*, 537 Pa. at 213, 642 A.2d at 476, citing *McVean & Barlow*, 88 N.M. 521, 543 P.2d 489. In reaching this conclusion, the court considered the "totality of the circumstances surrounding the sale," including the fact that the sales proceeds were distributed to the shareholders rather than being used to acquire business assets or generate income for use in future business operations. *Laurel Pipe Line*, 537 Pa. at 213-14, 642 A.2d at 476-77. In the case at bar, by contrast, it was undisputed that following the sale, [the taxpayer] Texaco-Cities remained primarily in the business of providing transportation by pipeline, and that the sales proceeds were invested right back into that business rather than being disseminated to its shareholders. Unlike the cases upon which Texaco-Cities relies, there was no evidence that this sale was a cessation of a separate and distinct portion of Texaco-Cities' business. Thus, the gain from the [Texaco-Cities'] sale was properly classified as business income.

*Texaco-Cities*, 182 Ill. 2d at 273-74, 695 N.E.2d at 486-87 (citations omitted). The same language can be similarly used to distinguish *Texaco-Cities* from the instant case.

In the instant case, as in *McVean* and *Laurel Pipe Line*, the transaction is a liquidation in cessation of business, distinguishing it from the *Welded Tube* and *Texaco-Cities* dispositions, which were in furtherance of the unitary businesses. Lenox did not use any of the liquidation proceeds in its remaining, ongoing business operations. Instead, Lenox distributed all of the ArtCarved proceeds to its sole shareholder less than twenty-four hours after their receipt. None of Lenox's remaining businesses involve fine jewelry or similar products. ArtCarved maintained its own management, personnel structure, accounting staff and operations, controller, operating and reserve accounts, payroll, payables and receivables accounts. The ArtCarved sale was a one-time complete liquidation of a separate operating division by Lenox, marking Lenox's complete departure from the fine jewelry business with immediate distribution of the sales proceeds to its sole shareholder.

Accordingly, the disposition of ArtCarved did not generate business income because the liquidation of this asset was not an integral part of Lenox's regular trade or business. Therefore, based on the functional test, Lenox's gain from the ArtCarved liquidation is properly classified as nonbusiness income. As nonbusiness income, the gain was not taxable by North Carolina, and Lenox is due a refund for overpayment of corporate income tax. We hereby affirm the Court of Appeals' reversal of the trial court's grant of summary judgment in favor of defendant and its remand for summary judgment in favor of plaintiff herein.

AFFIRMED.

Justices PARKER and MARTIN dissenting.

Justice PARKER dissenting.

Less than three years ago in *Polaroid Corp. v. Offerman*, 349 N.C. 290, 507 S.E.2d 284 (1998), this Court in an exhaustive opinion interpreted Section 105-130.4(a)(1) of the North Carolina Corporate Income Tax Act which defines business income. In that opinion, the Court concluded that under the plain language of the statute the definition of business income for corporate income tax purposes

**LENOX, INC. v. TOLSON**

[353 N.C. 659 (2001)]

included both a transactional test and a functional test. *Id.* at 301, 507 S.E.2d at 293. In *Polaroid* the Court stated that under the functional test, "once a corporation's assets are found to constitute integral parts of the corporation's regular trade or business, income resulting from the acquisition, management, and/or disposition of those assets constitutes business income regardless of how that income is received." *Id.* at 306, 507 S.E.2d at 296. The Court further stated that under the functional test, "the extraordinary nature or infrequency of the event is irrelevant." *Id.* at 296, 507 S.E.2d at 289.

The majority acknowledges that applying the above language, defendant is correct in its determination that the income generated from the sale of ArtCarved's assets would necessarily be classified as business income inasmuch as the assets associated with ArtCarved were integral to plaintiff's regular trade or business operations. The majority then disavows this language from *Polaroid* on the basis that the language "is a cause of confusion" and is "in direct contravention of the functional test of our statute." The majority then states that "[t]he source of corporate income cannot be disregarded, as extraordinary or infrequent transactions may well fall outside a corporation's regular trade or business. Again, the focus must be on the asset or property that generated the income and its relationship to the corporation's regular trade or business."

The majority then purports to apply the functional test to the facts of this case. The majority emphasizes that (i) a liquidation is an extraordinary, not a recurring transaction, and is thus not a sale in the regular course of trade or business; and (ii) the proceeds of the sale were distributed to the sole stockholder and were not reinvested in plaintiff's business. The majority finds support for this analysis in footnote 6 in the *Polaroid* opinion, which suggested that liquidations are not within the purview of the functional test. *Id.* at 306, n.6, 507 S.E.2d at 296, n.6.

In my view the majority has misread the functional test as set forth in the statute and interpreted in *Polaroid*. The functional test focuses on whether the asset is found to be an integral part of the corporation's regular business, not whether the transaction is found to be a part of the regular business. The critical question is whether the property or asset produced business income while it was owned by the taxpayer.

In *Polaroid*, this Court noted the administrative rule in effect since 1976 which provides

"(2) A gain or loss from the sale, exchange or other disposition of real or personal property constitutes business income if the property while owned by the taxpayer was used to produce business income."

*Id.* at 302, 507 S.E.2d at 293 (quoting 17 NCAC 5C .0703(2) (June 1998)).

Further, in my view the footnote to *Polaroid* is *obiter dictum* and is not a basis for disavowing the language in *Polaroid*. Even if the footnote were pertinent, a partial liquidation of a business division is not a "true liquidation." Moreover, in this case the sole shareholder to whom the proceeds were distributed was the parent corporation of plaintiff. Hence, the question remains as to whether the proceeds were used in furtherance of the unitary business.

Finally, the interpretation of our tax laws has widespread ramifications, and under the principle of *stare decisis* this Court should not lightly abandon or modify its interpretation of a tax statute. Both the Secretary of Revenue and the taxpayer are entitled to a measure of stability and constancy in the interpretation and application of our tax statutes.

Applying the functional test as set forth in *Polaroid*, I am of the opinion that ArtCarved as an asset of plaintiff was an integral part of plaintiff's regular trade or business, namely, manufacturing and selling various consumer goods, and that the sale of ArtCarved produced business income pursuant to N.C.G.S. § 105-130.4(a)(1).

For the foregoing reasons, I respectfully dissent and vote to reverse the opinion of the Court of Appeals.

Justice MARTIN joins in this dissenting opinion.