IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-224

Filed: 3 November 2020

Wake County, No. 19 CVS 6224

NORTH CAROLINA DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, DALE FOLWELL, State Treasurer (in official capacity only), STEVEN C. TOOLE, Director of Retirement Systems Division (in official capacity only), NORTH CAROLINA RETIRMENT SYSTEM COMMISSION BOARD OF TRUSTEES (in official capacity only), Petitioners,

v.

LAURA M. RIDDICK, Respondent.

Wake County, No. 19 CVS 6079

LAURA M. RIDDICK, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, DALE FOLWELL, State Treasurer (in official capacity only), STEVEN C. TOOLE, Director of Retirement Systems Division (in official capacity only), NORTH CAROLINA RETIRMENT SYSTEM COMMISSION BOARD OF TRUSTEES (in official capacity only), Respondents.

Appeal by North Carolina Department of State Treasurer, Retirement Systems Division, Dale Folwell, State Treasurer; Thomas G. Causey, Director of the Retirement Systems Division; and the North Carolina Retirement System Commission Board of Trustees (collectively, "the Retirement System parties") and Laura M. Riddick ("Riddick") from order entered 27 September 2019 by Judge C.

Winston Gilchrist in Wake County Superior Court. Heard in the Court of Appeals 6 October 2020.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Katherine A. Murphy, for the Retirement System parties.*
>
> *Robert F. Orr and Gammon, Howard & Zeszotarski, PLLC, by Joseph E. Zeszotarski, Jr., for Laura M. Riddick.*

TYSON, Judge.

## I. Background

Riddick was employed by the North Carolina Department of Natural and Cultural Resources from 1990 until 1996. Riddick was elected the Register of Deeds of Wake County and served from 1 December 1996 until she resigned on 31 March 2017. Riddick filed for retirement benefits on 1 April 2017.

Riddick embezzled public funds in an amount exceeding $600,000 while serving as Register of Deeds beginning in 2010 through 2016. Riddick entered guilty pleas to six (6) counts of felonious Embezzlement by a Public Official in Excess of $100,000, in violation of N.C. Gen. Stat. § 14-92 (2019). Riddick was sentenced to an active term in prison of 60 to 84 months. Riddick was also ordered to pay restitution in the amount of $926,615, which was paid in full after sentencing. These underlying criminal convictions and ordered restitution are not before us on this appeal.

The Retirement Systems Division oversees the relevant retirement systems: Teachers' and State Employees' Retirement System ("TSERS"), the Local

Governmental Employees' Retirement System ("LGERS"), and the Registers of Deeds' Supplemental Pension Fund ("RDSPF").

## A. TSERS

TSERS is a defined benefit pension plan. State employee members make contributions to the plan by deduction of six percent (6%) of their paycheck over the course of their careers. The State also makes a contribution. In order to retire with benefits of TSERS, the member must be either: (1) at least sixty years old with five years of vested membership, or (2) have completed thirty years of creditable service. *See* N.C. Gen. Stat. § 135-5(a) (2019).

A TSERS member's full retirement benefit is calculated as 0.0182, multiplied by a member's average compensation over the highest average salary for four consecutive years, multiplied by the number of years of creditable service. N.C. Gen. Stat. § 135-5(b19)(2) (2019). A reduced benefit is calculated by taking the above formula then multiplying a reduction factor from N.C. Gen. Stat. § 135-5(b19)(2) b, c (2019).

## B. LGERS

Similar to the requirements above, local governmental employees, who are employed by entities that participate in LGERS, become members of LGERS. As with TSERS, employees have six percent (6%) withheld from their pay during each pay period. Under LGERS, an employee is eligible to retire upon: (1) being at least

sixty years old with five vested years of creditable service; or, (2) have completed thirty years of creditable service. N.C. Gen. Stat. § 128-27(a1) (2019). An employee in LGERS is also eligible for early retirement at a reduced benefit, if they are at least fifty years old and accrued at least twenty years of creditable service. *Id.*

Full retirement benefits are calculated as .0185, multiplied by the employee's average compensation over four consecutive years which create the highest average, multiplied by the number of years of creditable service. *See* N.C. Gen. Stat. § 128-27(b21)(2)a. If an eligible employee takes an early retirement, a reduced benefit is calculated under the same formula as above. *See id.*

## C. RDSPF

Any register of deeds, who retires from LGERS or an equivalent locally sponsored plan with at least ten years of eligible service as a register of deeds, is entitled to receive a monthly pension from RDSPF. N.C. Gen. Stat. § 161-50.5 provides the pension amount is to be calculated by one share for each full year of eligible service multiplied by the total number of years of eligible service. N.C. Gen. Stat. § 161-50.5 (2019). Each share is calculated by determining the total number of years of eligible service for all eligible retired registers of deeds on December 21 of each calendar year. *Id.* Payment cannot exceed the maximum retirement allowance. *Id.*

## D. Riddick's Retirement

N.C. Gen. Stat. § 128-34(b) allows an employee to transfer benefits accrued in TSERS into an LGERS account. This transfers the accumulated contributing interest and service credits to LGERS and terminates the employee's eligibility and participation in TSERS.

In February 2017, Riddick completed a form to transfer accrued membership service from her TSERS account into her LGERS account. By completing this transfer, Riddick acknowledged she would "lose all pending and accrued rights to any benefits" from her prior membership in TSERS. When Riddick filed for retirement benefits on 1 April 2017, she was over fifty years old and had accrued at least twenty years of creditable employment service in LGERS. Her age and years accrued qualified her for a reduced retirement benefit from LGERS. Riddick was also eligible for payments from RDSPF, because she also had accrued at least ten years of service as a register of deeds.

When Riddick retired, her 618 days of unused sick leave were converted to 2.5833 years of additional credited service. *See* N.C. Gen. § 128-26(E) (2019). As of 1 April 2017, Riddick had 20.3333 years of creditable service in LGERS, 6.1667 years transferred from TSERS, and the 2.5833 years of credited sick leave to total 29.0833 years of creditable employment service in LGERS.

N.C. Gen. Stat. § 128-38.4A(a) mandates a member of LGERS, who is convicted of a felony, must forfeit retirement benefits from LGERS, if the offense is committed

while the "member is in service" and the felonious act is "directly related to the member's office or employment." N.C. Gen. Stat. § 128-38.4A(a) (2019).

The Retirement System parties determined both statutory conditions in N.C. Gen. Stat. § 128-38.4A(a) were met and reduced Riddick's creditable service to 16 years. The Retirement System parties concluded Riddick forfeited 4.333 years of membership in LGERS earned between 1 December 2012 and her resignation on 31 March 2017, all 2.5833 years of converted credited sick leave accrued at retirement, and 6.667 years of vested service transferred from TSERS to LGERS.

With only 16 years remaining after forfeiture, Riddick was ineligible to retire from LGERS prior to age 60 at a reduced benefit. Under the statute, Riddick lacked the minimum age to receive benefits or twenty years of accrued creditable service necessary for early retirement. Because Riddick was ineligible for immediate retirement from LGERS, she was also ineligible to receive immediate benefits from RDSPF.

The Retirement System parties ceased benefit payments on 25 September 2018 and assessed Riddick $126,290.28 due for overpayment of retirement funds from her retirement on 1 April 2017 until 25 September 2018. The return of Riddick's contributions, after deducting for taxes, resulted in a refund of $47,724.77, which was credited against the assessed overpayment, reducing the amount Riddick owed to $78,565.51.

Riddick filed a petition for a contested case hearing. The temporary ALJ concluded Riddick forfeited only 4.333 years of membership service in LGERS and 1.25 years of accrued service for unused sick leave, as of 1 December 2012, reducing her creditable service from 29.0833 years to 23.5 years. As Riddick retained over twenty years of creditable service, the ALJ ordered the Retirement System parties to recalculate Riddick's early retirement. The ALJ further concluded Riddick was entitled to payments from RDSPF from the date of her retirement until the date of the Division's final agency decision on 25 September 2018.

Both parties petitioned for judicial review of the ALJ's decision. The trial court applied the proper standard of review and affirmed the decision of the ALJ. Both parties timely appealed.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 150B-52 (2019).

## III. Issues

Riddick argues the trial court erred by: (1) concluding the forfeiture provisions of N.C. Gen. Stat. § 128-38.4A applies to her without the sentencing judge in the underlying felonies finding the aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(9); (2) concluding she had forfeited her rights to receive RDSPF benefits after notification by the Retirement System parties on 25 September 2018; (3)

violated her rights under the Constitution of the United States and the North Carolina Constitution by applying the forfeiture statute retroactively, and by taking her property without just compensation; (4) violated her rights under the Constitution of the United States and the North Carolina Constitution by instituting a cruel and unusual punishment; and, (5) reducing her converted sick leave to accrued service after 1 December 2012.

The Retirement System parties argue the trial court erred by: (1) crediting instead of forfeiting any accruals after 1 December 2012; (2) not forfeiting all of Riddick's unused sick leave converted to credited service in her LGERS account; and, (3) concluding Riddick was entitled to benefits from the RDSPF.

## IV. Standards of Review

"It is well settled that in cases appealed from administrative tribunals, questions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole record test." *Harris v. N.C. Dep't of Pub. Safety*, 252 N.C. App. 94, 99, 798 S.E.2d 127, 132 (2017) (citation and quotation marks omitted).

"Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been considered by the agency." *Blackburn v. N.C. Dep't of Pub. Safety*, 246 N.C. App. 196, 207, 784 S.E.2d 509, 518 (2016) (citation and quotation marks

omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [ALJ]." *Id.* (alteration in original) (citation and quotation marks omitted).

"Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions." *Henderson v. N.C. Dep't of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation omitted). "When the trial court applies the whole record test, however, it may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (citation and quotation marks omitted).

"[T]he whole record test is not a tool of judicial intrusion; instead, it provides a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." *Brewington v. N.C. Dep't of Pub. Safety*, 254 N.C. App. 1, 19, 802 S.E.2d 115, 128 (2017).

Like the jury in a jury trial, the ALJ is the sole judge of the credibility of the witnesses and the weight to be given to the evidence as the finder of fact. *Id.* at 20, 802 S.E.2d at 129. The challenger carries the burden to show prejudicial and reversible error on appeal.

V. <u>N.C. Gen. Stat. § 15A-1340.16(d)(9)</u>

Riddick argues the trial court erred by concluding the forfeiture provisions of N.C. Gen. Stat. § 128-38.4A (2019) applies to her without the sentencing judge in the underlying felonies finding the aggravating factor under N.C. Gen. Stat. § 15A-1340.16(d)(9) (2019).

N.C. Gen. Stat. § 128-38.4A provides:

> (a) Except as provided in G.S. 128-26(x), the Board of Trustees *shall not pay* any retirement benefits or allowances, except for a return of member contributions plus interest, *to any member who is convicted of any felony* under federal law or the laws of this State *if all* of the following apply:
> > (1) The offense is committed while the member is in service.
> >
> > (2) The conduct resulting in the member's conviction is directly related to the member's office or employment.
>
> (b) Subdivision (2) or subsection (a) of this statute *shall apply* to felony convictions *where the court finds under G.S. 15A-1340.16(d)(9).*

N.C. Gen. Stat. § 128-38.4A (emphasis supplied). N.C. Gen. Stat. § 15A-1340.16(d)(9) provides as an aggravating factor for crimes: "The defendant held public elected or appointed office or public employment at the time of the offense and the offense directly related to the conduct of the office or employment." N.C. Gen. Stat. § 15A-1340.16(d)(9).

N.C. Gen. Stat. § 128-26(x) provides:

If a member who is in service and has not vested in this System on December 1, 2012, is convicted of an offense listed in G.S. 128-38.4A for acts committed after December 1, 2012, then that member shall forfeit all benefits under this System, except for a return of member contributions plus interest. If *a member who is in service and has vested* in this System on December 1, 2012, is convicted of an offense listed in G.S. 128-38.4A for *acts committed after* December 1, 2012.

N.C. Gen. Stat. § 128-26(x) (2019) (emphasis supplied).

## A. Rules of Statutory Construction

When reviewing the parties' arguments, we apply the plain meanings of N.C. Gen. Stat. § 128-38.4A. We are guided by several well-established principles of statutory construction.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citations omitted). "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010).

"Statutes *in pari materia* must be read in context with each other." *Cedar Creek Enters. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976). "Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor*

*v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (internal quotation marks, citations, and ellipses omitted).

"[W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (quoting *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

## B. Analysis

Riddick pleaded guilty to six (6) counts of felonious embezzlement by public employee of over $100,000 each, all of which occurred while she was employed and served as the elected Wake County Register of Deeds. By pleading guilty, Riddick admitted committing six violations of N.C. Gen. Stat. § 14-92 ("If any . . . register of deeds . . . shall embezzle or wrongfully convert to his own use, or corruptly use, or shall misapply for any purpose other than that for which the same are held, or shall fail to pay over and deliver to the proper persons entitled to receive the same when lawfully required so to do, any moneys, funds, securities or other property which such officer shall have received by virtue or color of his office in trust for any person or corporation, such officer shall be guilty of a felony.").

N.C. Gen. Stat. § 128-38.4A(a) mandates "the Board of Trustees *shall not pay*" if "[t]he offense is committed while the member is in service" and "the conduct

resulting in the member's *conviction is directly related to the member's office*." (emphasis supplied). This statute is not ambiguous. Riddick argues N.C. Gen. Stat. § 128-38.4A(a)(2) does not apply when the N.C. Gen. Stat. § 15A-1340.16(d)(9) aggravating factor was not found. Her assertion is contrary to the plain language of the statute.

N.C. Gen. Stat. § 128-38.4A(b) applies when the aggravating factor is found "*or* other applicable state or Federal procedure that the member's conduct is directly related to the member's office or employment." N.C. Gen. Stat. § 128-38.4A(b) (emphasis supplied). The General Assembly has since repealed subsection (b). *See* 2020 N.C. Sess. Laws 48, § 4.3(b).

Riddick pleaded guilty to six violations of N.C. Gen. Stat. § 14-92. The plain language of that statute provides if a: "register of deeds . . . shall embezzle . . . [she] shall be guilty of a felony." By pleading guilty to six violations of N.C. Gen. Stat. § 14-92, Riddick expressly admitted she had embezzled public funds entrusted to her by virtue of her office and while serving as the Wake County Register of Deeds.

The statute provides a disjunctive "or" and enables it to be invoked through "state or Federal procedure", which is provided for by the express elements of N.C. Gen. Stat. § 14-92. There are scenarios where an aggravating factor is not found by the jury or a judge or is omitted in a plea bargain. *See* N.C. Gen. Stat. § 15A-1340.16(a1) (2019). Riddick's argument is overruled. As the ALJ found and the trial

court properly concluded, a valid forfeiture of future accruals occurred as of 1 December 2012, we need not address Riddick's forfeiture arguments under N.C. Gen. Stat. § 128-38.4A.

## VI. Denial of RDSPF Benefits

Riddick argues the forfeiture was invalid under N.C. Gen. Stat. § 161-50.4 (c) (2019). As held above, a valid forfeiture as of 1 December 2012 occurred under N.C. Gen. Stat. § 128-38.4A. The General Assembly outlined specific mechanisms for forfeiture. By enacting N.C. Gen. Stat. § 161-50.4 (c), which enumerated specific felonies to justify a forfeiture, the General Assembly did not invalidate or repeal the mechanism under N.C. Gen. Stat. § 128-38.4A for forfeiture. This argument is dismissed.

## VII. Impairment of Contract

Riddick further argues the denial of benefits constitutes an unconstitutional impairment of contract in violation of the Constitution of the United States and the North Carolina Constitution.

An appellate court "presumes that statutes passed by the General Assembly are constitutional, and duly passed acts will not be struck unless found unconstitutional beyond a reasonable doubt." *N.C. Ass'n of Educators v. State*, 368 N.C. 777, 786, 786 S.E.2d 255, 262 (2016).

The "Contract Clause in the Constitution of the United States provides, inter alia: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U. S. Const. art I, § 10. In *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 52 L. Ed. 2d 92 (1977), the Supreme Court of the United States articulated a three-part test to determine whether a state has impaired a contractual obligation.

North Carolina adopted the three-part test from *U.S. Trust Co.* in *Bailey v. State*, 348 N.C. 130, 500 S.E.2d 54 (1998). Our Supreme Court held "[t]he *U.S. Trust Co.* test requires a court to ascertain (1) whether a contractual obligation is present, (2) whether the state's actions impaired that contract, and (3) whether the impairment was reasonable and necessary to serve an important public purpose." *Id.* at 141, 500 S.E.2d at 60.

The Supreme Court of the United States and the Supreme Court of North Carolina have both "recognized a presumption that a state statute is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." *N.C. Ass'n of Educators*, 368 N.C. at 786, 786 S.E.2d at 262 (citing *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79, 82 L. Ed. 57, 62 (1937)). Our Supreme Court held: "Construing a statute to create contractual rights in the absence of an expression of unequivocal intent would be at best ill-advised, binding the hands of future sessions of the legislature and obstructing or preventing subsequent revisions and repeals." *Id.* at 786, 786 S.E.2d at 262-63. *See Lake v. State*

*Health Plan for Teachers & State Emps.*, 264 N.C. App. 174, 181, 825 S.E.2d 645, 651 (2019). The party asserting the creation of a contract bears the burden of overcoming this presumption against the formation of a contract. *Id.*

The Retirement System parties assert the RDSPF is governed by N.C. Gen. Stat. § 161-50.1(c) (2019). This statute provides "The provisions of this Article shall be subject to future legislative change or revision, and *no person is deemed to have acquired any vested right to a pension payment provided by this Article.*" N.C. Gen. Stat. § 161-50.1(c) (emphasis supplied).

Riddick argues she has a vested contractual right to RDSPF benefits and payments, citing *Bailey*. In *Bailey*, our Supreme Court examined a constitutional challenge to a statute that removed the tax-exempt status of retirement benefits for state employees, holding the RDSPF was one of "at least thirteen different public employee retirement systems . . . operating for the purpose of providing public servants with retirement benefits." *Bailey*, 348 N.C at 136, 500 S.E.2d at 57.

Our Supreme Court further held:

> Each of these systems contains certain preconditions to the receipt of benefits. The primary one is the requirement that employees work a predetermined amount of time in public service before they are eligible for retirement benefits. After employment for the set number of years, an employee is deemed to have "vested" in the retirement system. Thereafter, the employee generally is guaranteed a percentage payment at retirement based upon years of service.

*Id.* at 138, 500 S.E.2d at 58.

"[T]he relationship between the Retirement Systems and state employees who have vested in those systems is contractual in nature." *Id.* at 140, 500 S.E.2d at 60. The Supreme Court of North Carolina in *Bailey* struck down the statute and held there was an unconstitutional impairment of contract to those employees who had vested when it was passed by the legislature. *Id.* at 153, 500 S.E.2d at 67. Riddick asserts *Bailey* determines a contractual relationship exists and N.C. Gen. Stat. § 128-38.4A interferes with this contractual right for her.

N.C. Gen. Stat. § 128-38.4A serves an important governmental purpose in holding elected officials responsible and accountable for their illegal actions. This forfeiture provides additional deterrence beyond that offered by the criminal statutes. This remedy is "reasonable and necessary to serve an important government purpose." *Bailey*, 348 N.C. at 141, 500 S.E.2d at 60 (citation omitted). A government or public employee being paid a taxpayer-funded salary must not benefit from their position to embezzle public taxpayer funds. In exchange for these benefits, the elected official also maintains obligations under the contract for retirement benefits. *See McCraw v. Llewellyn*, 256 N.C. 213, 216, 123 S.E.2d 575, 578 (1962) ("One of the essential elements of every contract is mutuality of agreement" (citation omitted)).

To remain eligible for retirement benefits, Riddick mutually agreed and bore a duty to faithfully execute the duties of her office and to receive, hold, and account for

all public funds entrusted to her, which she admittedly violated by pleading guilty to six (6) counts of embezzlement of over $100,000 each. N.C. Gen. Stat. § 128-38.4A does not unconstitutionally impair contracts under the Federal or State Constitutions. Riddick's argument is overruled.

## VIII. Retroactive Taking

Riddick argues the forfeiture violates her rights under Article I, Section 10 of the Constitution of the United States and Article I, Section 19 of the North Carolina Constitution by retroactively taking her property without just compensation.

The relationship between the State and Riddick is contractual in nature. "The privilege of contracting is both a liberty and a property right . . . . 'Included in the right of personal liberty and the right of private property — partaking of the nature of each — is the right to make contracts for the acquisition of property.'" *Morris v. Holshouser*, 220 N.C. 293, 295-96, 17 S.E.2d 115, 117 (1941) (citations omitted).

Our Supreme Court stated: "The application of a statute is deemed 'retroactive' or 'retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." *Gardner v. Gardner*, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980).

In *Gardner*, our Supreme Court examined whether "a statute may be applied retroactively to alter the effect of a final judgment which had previously established the proper venue for an action" and held the legislation altered the status of a prior

ruling. *Id.* at 716, 268 S.E.2d at 469. "Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, must be deemed retrospective[.]" *Id.* at 718, 268 S.E.2d at 471 (citation omitted).

In *Bailey*, our Supreme Court found the change in taxation status was a "derogation of plaintiffs' rights established through the retirement benefits contracts and thus constitutes a taking of their private property." *Bailey*, 348 N.C. at 155, 500 S.E.2d at 69.

Riddick acquired contractual rights in LGERS when she vested in 2001. N.C. Gen. Stat. § 128-38.4A is effective as of 1 December 2012. The Retirement System parties expressly cannot forfeit accredited and accrued service time prior to the enactment of the act, which would run afoul of our General Statutes, *Bailey*, and *Gardner*. The Retirement System parties and the trial court correctly concluded Riddick forfeited accrued time after 1 December 2012 when the statute became effective.

This forfeiture differs from the retroactive application of both *Bailey* and *Gardner*. *In Bailey*, retirees lost benefits they had earned for future payments. *Bailey*, 348 N.C. at 155, 500 S.E.2d at 69. In *Gardner,* a prior legal ruling was overturned due to the statutory change. *Gardner*, 300 N.C. at 717, 268 S.E.2d at 470.

Riddick stopped accruing time the date the statute became effective, not on the dates of her first and second offenses of embezzlement. Both of these crimes occurred prior to the effective date of the statute. She did not lose her accrued vested right to receive future payments prior to that date. Riddick was placed in the same position as if she had retired on the effective date of the statute. She received the benefit of accruing service time, even while admittedly embezzling funds, until the effective date of the statute ceased that accrual effective 1 December 2012. The statute only addresses prospective acts. Riddick's argument is overruled.

IX. Cruel and Unusual Punishment

Riddick argues her loss of accrued service constitutes cruel and unusual punishment in violation of the North Carolina Constitution. N.C. Const. art. I, § 27. "When the punishment imposed is within the limit fixed by law it cannot be excessive." *State v. Blake*, 157 N.C. 608, 611, 72 S.E. 1080, 1082 (1911). The forfeiture is authorized by statute and subject to the 1 December 2012 effective date.

Beyond citing the state constitutional provision and a definition from a treatise, Riddick does not cite any case, nor can this Court find any case, holding as cruel and unusual punishment a statute forbidding further and prospective accrual of state retirement benefits, upon an employee's related criminal conduct while holding public office or employment. Plaintiff has failed to show the forfeiture of

pension benefits under the statutory mechanism provided by the General Assembly is cruel and unusual punishment.

Riddick has not argued the forfeiture provisions violates the excessive fines clauses of the Constitution of the United States and the North Carolina Constitution. By failing to assert any authority to support her arguments, Riddick has waived any argument this statute violates the excessive fines clauses in either constitution. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, of in support of which no reason or argument is stated, will be taken as abandoned."). Riddick's argument is dismissed.

### X. Forfeiture of Unused Sick Leave after 1 December 2012

Riddick argues her creditable service attributed to unused sick leave should not have been forfeited under N.C. Gen. Stat. § 128-38.4A. As established above, the forfeiture under N.C. Gen. Stat. § 128-38.4A as of its effective date was lawful. All sick leave she purportedly accrued after 1 December 2012 was subject to forfeiture due to her admitted criminal acts. Riddick's argument is overruled.

The Retirement System parties argue Riddick forfeited all her unused sick leave because an employee had no vested right to convert sick leave to accrued service until the actual date of retirement. N.C. Gen. Stat. § 128-26(x) provides:

> If a member who is in service and has not vested in this System on December 1, 2012, is convicted of an offense listed in G.S. 128-38.4A for acts committed after December 1, 2012, then that member shall forfeit all benefits under

this System, except for a return of member contributions plus interest. *If a member who is in service and has vested in this System on December 1, 2012, is convicted of an offense listed in G.S. 128-38.4A for acts committed after December 1, 2012, then that member is not entitled to any creditable service that accrued after December 1, 2012.*

N.C. Gen. Stat. § 128-26(x) (emphasis supplied).

N.C. Gen. Stat. § 128-26(e) provides:

Creditable service at retirement on which the retirement allowance of a member shall be based shall consist of the membership service rendered by the member since he or she last became a member, and also if the member has a prior service certificate which is in full force and effect, the amount of the service certified on the prior service certificate; and if the member has sick leave standing to the member's credit upon retirement on or after July 1, 1971, one month of credit for each 20 days or portion thereof, but not less than one hour; *sick leave shall not be counted in computing creditable service for the purpose of determining eligibility for disability retirement or for a vested deferred allowance.* Creditable service for unused sick leave shall be allowed only for sick leave accrued monthly during employment under a duly adopted sick leave policy and for which the member may be able to take credits and be paid for sick leave without restriction. However, in no instance shall unused sick leave *be credited to a member's account at retirement* if the member's last day of actual service is more than 365 days prior to the effective date of the member's retirement. *Days of sick leave standing to a member's credit at retirement* shall be determined by dividing the member's total hours of sick leave at retirement by the hours per month such leave was awarded under the employer's duly adopted sick leave policy as the policy applied to the member when the leave was accrued.

N.C. Gen. Stat. 128-26(e) (2019) (emphasis supplied).

The plain language of N.C. Gen. Stat. § 128-26(x) states the "member is not entitled to any creditable service that accrued after December 1, 2012." N.C. Gen. Stat. § 128-26(x).  The unused sick leave is only allowed to be converted to creditable service time into the member's account at retirement. N.C. Gen. Stat. § 128-26(e).  Riddick was only able to convert her unused sick leave into creditable service time upon her retirement effective 1 April 2017.  Her retirement occurred after the effective forfeiture date of 1 December 2012 in N.C. Gen. Stat. § 128-38.4A.

Riddick forfeited all 2.5833 years of creditable service converted from unused sick leave, not just the 1.25 years of creditable service forfeited after 1 December 2012 as concluded by the ALJ and affirmed by the superior court.  The superior court's ruling on this issue is reversed and this cause is remanded to that court for further remand with instructions to recalculate Riddick's accrued service without including any credit for unused sick leave consistent with the statute and this opinion.

## XI. 2017 Transfer of Membership from TSERS to LGERS

The Retirement System parties assert Riddick should forfeit all accrued service transferred from TSERS to LGERS.  They argue the transfer of creditable service accrued in the retirement system after the effective date of N.C. Gen. Stat. § 128-38.4A, 1 December 2012, and is subject to forfeiture.

By transferring her accrued and vested benefits from TSERS to LGERS Riddick attested: "I understand that upon completion of the transfer, I lose all

pending and accrued rights to any benefits from my membership in the Retirement System from which I am transferring accumulated contributions and service credits."

N.C. Gen. Stat. § 128-26(w) provides:

> If a member who is an elected government official and has not vested in this System on July 1, 2007, is convicted of an offense listed in G.S. 128-38.4 for acts committed after July 1, 2007, then that member shall forfeit all benefits under this System, except for a return of member contributions plus interest. If a member who is an elected government official and has vested in this System on July 1, 2007, is convicted of an offense listed in G.S. 128-38.4 for acts committed after July 1, 2007, then that member is not entitled to any creditable service that accrued after July 1, 2007. *No member shall forfeit any benefit or creditable service earned from a position not as an elected government official.*

N.C. Gen. Stat. § 128-26(w) (2019).

Riddick worked for the North Carolina Department of Natural and Cultural Resources from 1990 until 1996, six and one-half years in an unelected position. This employment and length of service vested and earned her creditable time in TSERS, which she was allowed to transfer to LGERS. N.C. Gen. Stat. § 128-26(w) is controlling, Riddick cannot forfeit vested service she had already accrued as an unelected state official prior to her criminal acts. By the express language of the transfer, Riddick lost her right to further participate in TSERS, but not her prior accrued and vested service while in an unelected position. The Retirement System parties' argument on forfeiture of her vested service in TSERS is overruled.

## XII. Retirement from RDSPF

The Retirement System parties argue Riddick was ineligible to retire from RDSPF because of lack of and the improper calculation of service time. Because we affirm the judgment of the superior court to credit her vested service in TSERS to LGERS, Riddick was eligible to retire from RDSPF as of 1 December 2012. The ALJ and superior court properly concluded Riddick forfeited 4.3333 years of LGERS creditable service, but remained eligible to retire from LGERS. Because of her eligibility to retire from LGERS, she was also eligible to retire from RDSPF. The Retirement System parties argument is overruled.

## XIII. Conclusion

We affirm the superior court's conclusions: (1) the forfeiture provisions of N.C. Gen. Stat. § 128-38.4A applies to Riddick; (2) Riddick did not forfeit her rights to receive benefits from RDSPF prior to 1 December 2012 after notification by the Retirement System parties; (3) N.C. Gen. Stat. § 128-38.4A does not violate her rights under the Constitution of the United States and the North Carolina Constitution by retroactively applying the forfeiture statute and taking her property without just compensation; (4) the application of the forfeiture statute post 1 December 2012 is not cruel and unusual punishment; and, (5) disallowing retirement credit for her unused sick leave post 1 December 2012. These parts of the superior court's order remain undisturbed and are affirmed.

The superior court erred by concluding Riddick forfeited only 1.25 years of creditable service accruing after 1 December 2012 for her unused sick leave. Riddick forfeited all 2.5833 years she attempted to convert to creditable service upon retirement from unused sick leave. This cause is remanded to the superior court with instructions to enter an order forfeiting all 2.5833 years of credited service from unused sick leave and for further remand with instructions to recalculate Riddick's accrued service and benefits as is consistent with this opinion. *It is so ordered.*

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges BRYANT and COLLINS concur.